18630

Murray  H.  GENTRY,  Respondent,  v.  WATKINS-CAROLINA
TRUCKING  COMPANY,  Appellant

(154 S. E. (2d) 112)

318

*Messrs. Ward & Howell,* of Spartanburg, and *Yarborough & Nettles,* of Florence, *for appellant,*

*James R. Turner, Esq.,* of Spartanburg, *for respondent,*

April 4, 1967.

LIONEL K. LEGGE, Acting Associate Justice:

Plaintiff sued for personal injuries and property damage resulting from a collision between his small truck and the defendant's tractor-trailer, and was awarded a verdict for thirty thousand dollars actual damages.

There is no substantial conflict in the evidence concerning the accident itself. Plaintiff, then fifty-two years old, was a five-county distributor for Mack Tool Company, and had for the last eight years been engaged in the business of

distributing hand tools and test equipment such as are used by mechanics in repair garages and service stations. On the morning of May 12, 1964, he was driving a new GMC "Handy Van" which he had purchased four days before and in which he was carrying his stock of tools. He entered Interstate Highway 85 from South Carolina Highway 9 and had proceeded a short distance on I-85 (according to his testimony, four-tenths of a mile; according to that of defendant's witness, one-tenth of a mile) when his "Handy Van", traveling in the right-hand traffic lane at a speed, according to his testimony, of between forty-five and fifty miles per hour, was struck from the rear by the defendant's tractor-trailer carrying a load of approximately ten tons. His vehicle was demolished, much of his stock of tools was lost, and he sustained painful and serious injuries, to which we shall later refer in some detail.

Defendant's truck driver testified that as he approached the junction of I-85 and Highway 9 his speed was between fifty-five and sixty miles per hour; that when he first saw plaintiff's vehicle it was on I-85, about one hundred yards beyond the merger lane for vehicles entering from Highway 9; that he intended to pass the plaintiff's vehicle, and in preparing to do so turned his head to look into his side-view mirror for the purpose of observing approaching traffic before changing over into the passing lane; and that "when I turned to look into my mirror I—took me maybe a couple of seconds, when I turned back it looked like the truck was just stopped in the road. And I made an effort to try to pass him anyway but I caught up to him too quick, the truck too quick, looked like it had stopped and I hit the left corner of it."

The defendant has appealed on numerous exceptions, which may be grouped as follows:

1. Those charging error in the admission of certain testimony:

a. of Dr. Joseph Hodge;
b. of the plaintiff himself;

c. of the witness Leonard Brown; and

d. of the witness C. E. Erskine.

2. One challenging, as a charge on the facts, a statement made by the trial judge in the course of his instruction of the jury.

3. One charging error in refusing defendant's motion for new trial upon the ground that the verdict was grossly excessive.

The plaintiff and the defendant's truck driver were the only eyewitnesses to the accident, and the clear inference from their testimony is that the collision was caused not by any fault of the plaintiff, but by the negligence of the defendant's driver. That the defendant shares that view is evidence from its exceptions, none of which questions its liability. It would seem, then, that the main issues here are: (1) was the verdict so grossly excessive as to require that it be set aside; and (2) did the challenged statement of the trial judge constitute reversible error. By the same token, it would appear that the issues raised by the exceptions to admission of testimony are of consequence only insofar as they may bear upon the alleged excessiveness of the verdict, *i. e.*, to the extent that the testimony to which they are directed may have tended to enlarge the verdict beyond the limit of tolerance.

The "Questions Involved", as stated in appellant's brief, are:

"1. Did the court err in permitting a non-attending and non-treating medical expert witness to give hearsay history and his opinions and conclusions?

"2. Did the court err in admitting incompetent evidence of probative value on a material issue in the case and was it prejudicial?

"3. Did the court err in failing to grant a new trial based on the excessiveness of the jury verdict?"

Question 1 embraces Exceptions 1, 6, 7, 8, 9, 10, 11, 12 and 13, all relating to the testimony of Dr. Joseph Hodge. Exception 1 charges in general language

that his testimony as to the plaintiff's injuries was incompetent and that therefore, since it was the only medical testimony for the plaintiff, the court should have granted defendant's motion for judgment *n. o. v.* because of lack of competent medical testimony establishing that the plaintiff's injuries were the result of the defendant's negligence. This exception overlooks the plaintiff's own testimony, and is clearly without merit.

Exceptions 6, 8, 9, 10, 11, 12 and 13 charge that the trial judge erred in permitting Dr. Hodge to testify, over objection, as to the history given him by the plaintiff at the time and in the course of his examination. The patient's history as thus given to the physician was concerned not only with the recent injury but also with the fact that in 1958 he had undergone an operation for the removal of a ruptured intervertebral disc, from which he had made a good recovery, returning to full-time employment several years before the accident, but which had left him with an "unstable" back,— a condition that in Dr. Hodge's opinion had been aggravated by the recent injury.

The exceptions under discussion are based upon the premise that Dr. Hodge was not the plaintiff's attending physician, did not treat him, and saw him only for "evaluation", and thus for the sole purpose of testifying in his behalf. Cited in support of this contention is the following from Chamberlayne on Evidence, Vol. 4, Section 2635: "\* \* \* Should it appear that the declarations were made *post litem motam* to an attending physician or to a skilled medical observer for the purpose of enabling the latter to testify as a witness for the declarant, the inference of trustworthiness largely disappears or is even reversed, the declaration being rejected by careful administrators as unreliable."

Appellant's premise is, in our opinion, unsound. For although Dr. Hodge was not the physician who attended the plaintiff immediately after the accident, it is clear from his testimony that on July 18, some two months later, the plaintiff came to him for evaluation and recommendations

as to treatment; that he then examined him and recommended treatment; and that thereafter he re-examined him on numerous occasions and treated him with diathermy, with muscle relaxants, and with injections for the relief of his neurogenic complaints, the last treatment being on January 14, 1966, shortly before the term of court at which the case was tried.

We cannot conclude from the record before us that the plaintiff went to Dr. Hodge simply to enable him to testify in his behalf. Nor, for that matter, can we conclude that his visit to Dr. Hodge was *post litem motam,* the record being silent as to the date when this action was commenced. And there is nothing here to indicate that the plaintiff, in making to Dr. Hodge these statements (which related not to the defendant's liability, but to the plaintiff's physical condition), was actuated by any such calculated duplicity as is suggested by the rule that appellant invokes. Moreover, that rule does not require that the testimony to which it refers shall be rejected at all events. As pointed out by Professor Wigmore in his work on Evidence, 3rd Ed. Vol. VI, Section 1721, whether or not testimony of the physician as to statements made to him by the patient *post litem motam* should be excluded is a matter dependent upon the circumstances of each case, and to be left to the trial court's discretion.

Even assuming that Dr. Hodge was consulted for the sole purpose of qualifying him as a witness, we are of the opinion that his testimony as to the patient's history was admissible, not as substantive evidence of the truth of the patient's statements, but as information relied upon by him in arriving at his diagnosis and prognosis.

Statements as to his present condition made by a patient to a physician consulted for treatment are generally admitted as evidence of the facts stated. The decisions are not uniform, however, as to the admissibility, as substantive evidence, of the patient's statements concerning past symptoms. In our early case of *McClintock*

*v. Hunter,* Dudley's Law (23 S. C. Law) 327, the patient's declaration to his physician as to the time when his disease had commenced was held inadmissible.

Where the physician is consulted not for treatment, but solely as a prospective witness, some courts have held that he may testify only to objective facts observed by him as the basis of his opinion, and not to what the patient has said about his medical history. The majority, and in our opinion sounder, view is that while the physician's testimony as to the patient's statements of his present condition and past symptoms is not admissible as substantive proof of the facts so stated, it is, in the absence of fraud or bad faith (as to which there is no evidence here), admissible as information upon which he has relied in reaching his professional opinions. And since in such case the physician's testimony is admissible in evidence subject to the restriction before mentioned, the fact that he was consulted *post litem motam* for the purpose of enabling him to testify as an expert witness affords, in itself, no valid ground for rejecting it. The divergent views on the admissibility of testimony by a physician, whether employed for treatment or for the purpose of testifying, as to present and past medical history related to him by the patient are concisely and critically discussed in McCormick on Evidence (1954 Ed.), Sections 266, 267, pp. 563-566. See also annotations in 67 A. L. R. 10, 80 A. L. R. 1527, and 130 A. L. R. 977. The parties are entitled to have the jury instructed as to the aforesaid limitation upon such testimony; but that is a matter with which we are not concerned in the present case, the defendant having not requested such instruction but having instead taken the position that the proffered testimony was incompetent.

Exception 7 charges that the trial judge erred in refusing the defendant's motion for new trial on the ground that the court had erred in allowing plaintiff's counsel to lead the witness Dr. Hodge "on the crucial issue as to the purpose for which said witness had examined the

plaintiff." It appears from the record that although counsel's question was leading and objection to it was overruled the witness did not answer it, but answered a proper question propounded by the court.

To quote:

"Q. I ask you was he seen in consultation for evaluation —I will ask you whether or not the examination was also for the purpose eventually of treating him?

"Mr. Nettles: Your Honor, we object to this leading the witness.

"The Court: All right, I will permit the answer, go ahead. Don't lead the witness. What was the purpose of the examination?

"A. The purpose of the examination was to obtain a history and to perform a physical examination and to determine what type of treatment was necessary for this patient."

Exceptions 4 and 5 charge that the trial judge erred in permitting the plaintiff, in explaining a photograph of his "Handy Van" that he himself had taken after the accident, to point out a black mark on the left side of the rear bumper as being "where his right front tire made contact with my van", and to point out, in another such photograph, the caved-in back of his van as being "where he started climbing that van, it's caved in, the back is pushed forward." In support of these exceptions it is argued that since the plaintiff later testified that he had not seen the tractor-trailer before or at the time of the rear-end collision, all that he could have known was that his vehicle was struck "by some object", and that this testimony amounted merely to conclusions as to which he should not have been permitted to testify. In view of the testimony of the defendant's truck driver, to which we have referred, and the plaintiff's own testimony that when, after the collision, he regained consciousness and crawled out through the windshield of his vehicle the defendant's tractor-trailer was lying, turned over, in the median of the highway, opposite the plaintiff's vehicle, the plaintiff's "conclusion"

hardly seems farfetched. The testimony here complained of was not such as would tend to induce an excessive verdict; the error, if any, in its admission affords no ground for reversal.

Leonard Brown, district manager for Mack Tools, Inc., was a witness for the plaintiff. He testified that he maintained a yearly record of sales made by each of the salesmen in his territory. From notes that he had made from those records he was permitted to testify, over the defendant's objection on the ground that the records themselves were the best evidence, as to the percentage of increase or decrease in the volume of plaintiff's business for the years 1963, 1964 and 1965, as compared with each preceding year. Exception 14 challenges the admission of this testimony; but the record shows that the witness was cross examined on the subject without reservation of the objection. The exception is therefore overruled. *Snipes v. Augusta-Aiken Ry. & Electric Corp.*, 151 S. C. 391, 149 S. E. 111; *Nock v. Fideliey & Deposit Co.*, 175 S. C. 188, 178 S. E. 839, 98 A. L. R. 757; *Smith v. Metropolitan Life Ins. Co.*, 191 S. C. 310, 4 S. E. (2d) 270; *Wright v. Gilbert*, 227 S. C. 334, 88 S. E. (2d) 72.

One of the plaintiff's witnesses, C. E. Erskine, was the highway patrolman who was sent to investigate the accident and who, according to the plaintiff's testimony, arrived upon the scene just as the plaintiff crawled out of his wrecked vehicle. In describing the condition of plaintiff's "Handy Van", the witness testified that its left rear wheel had been "knocked off". Defendant's objection to the use of that expression was overruled; and now, by Exception 16, the contention is made that the court erred in overruling the objection for incompetence. Since the witness did not see the collision, his testimony that the wheel had been knocked off was incompetent, being a conclusion rather than the statement of a fact within his knowledge; but it was not such as would tend to induce an exessive verdict, and in the light of all of the evidence the error in its

admission was trivial, affording in our opinion no ground for reversal.

Exception 15 charges that the trial judge erred "in not allowing the highway patrolman who investigated the accident to testify as to statements made to him by the plaintiff, in that the plaintiff was a.party to the action and the driver of the vehicle in which he was riding at the time of the accident and such evidence was admissible as an admission against interest."

In the course of his testimony on direct examination, the witness stated that after he had parked his patrol car near the scene of the accident he talked to both the plaintiff and the driver of the defendant's tractor-trailer, asked them for their drivers' licenses, "and before the ambulance got there, I of course asked each one of them what happened." At this point defendant's counsel stated: "We would object to anything that he says these—don't let him testify to anything that they said." Thereupon the witness having proceeded no farther in his testimony, plaintiff's counsel asked him: "Did the driver of the big truck give you any explanation as to why he hit the little van?" Counsel for the defendant again objected, and, the jury having been excused, there ensued among counsel and the trial judge an extended discussion concerning the admissibility of the testimony thus sought to be elicited, counsel for the defendant arguing that since the plaintiff had not been able to say how long he had remained unconscious after the collision the lapse of time between the accident and the patrolman's arrival could not be determined with certainty. At the conclusion of this discussion the trial judge ruled that the witness would not be permitted to testify to anything that either the plaintiff or the defendant's driver said to him.

In the course of his cross examination of this witness, defendant's counsel did not ask him whether the plaintiff had made any statement to him, assuming, we infer, that he was precluded from persuing that inquiry by the court's ruling above referred to.

The admissibility, as part of the *res gestae,* of statements made by a party or his agent following an accident is a matter addressed to the discretion of the trial judge, and his ruling thereabout will not be disturbed on appeal "unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be." *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742; *Marshall v. Thomason,* 241 S. C. 84, 127 S. E. (2d) 177. In the present case we need not determine whether or not the court's ruling was correct, for the defendant, having requested it, may not now complain of it.

At the conclusion of the plaintiff's case the defendant moved to strike from the complaint, as being unsupported by evidence, certain specifications of negligence; and the trial judge granted the motion as to two of them, *viz*: those relating to the physical condition of the defendant's driver and to defective brakes. In charging the jury, the trial judge instructed them in that regard as follows:

"I have withdrawn from your consideration the allegation of negligence that the defendant's driver continued to operate the truck when he knew or should have known that he was not in any physical condition to do so. You are not to consider that as an element of negligence. *I could find no proof in the case to substantiate that particular charge of negligence.* And also the allegation of negligence that says the vehicle, that is the truck, was not equipped with good and sufficient brakes. *I found no evidence in the case to indicate in any way that the brakes on the truck were defective.* That, however, would not have any bearing on your consideration of the remaining allegations of negligence which are left in the complaint and it is for you to determine from the facts in the case whether or not those allegations of negligence have been proven to your satisfaction by the greater weight or preponderance of the evidence and whether if they were proved they were the direct and proximate cause of this particular accident."

At the conclusion of the charge counsel for the defendant took exception to that portion of it that we have italicized, contending that those sentences carried the implication that there was evidence to support the allegations of negligence other than those that had been stricken. Thereupon the trial judge had the jury brought back to the courtroom and instructed them as follows:

"Gentlemen of the jury, when I told you at the outset of my charge, that I had withdrawn from your consideration the allegations of negligence concerning the physical condition of the defendant and the condition of the brakes on the truck I did not mean to, if I did, infer any feeling on my part concerning the other allegations of negligence. As I told you these are charges, allegations, and they must be proved, and it is for you to determine, and not for me, and I didn't mean to infer anything to you because of what I told you about taking out those two charges of negligence."

By Exception 17, appellant contends that the italicized sentences of the original charge constituted a charge on the facts and in effect told the jury that there was evidence to support the remaining allegations of negligence; that the court's subsequent instruction was ineffective to correct the error; and that therefore the court erred in refusing to grant the motion for new trial made on that ground. This exception is without merit. In the first place the quoted portion of the original charge did not, in our opinion, constitute a charge on the facts. But if by any chance it may have left in the minds of the jury the impression that in the trial judge's opinion the evidence supported the other allegations of negligence, his further charge upon their having been recalled was clearly sufficient to erase any such impression.

Exception 19 charges that the trial judge erred in refusing the defendant's motion for new trial upon the ground that the amount of the verdict was grossly excessive. The plaintiff testified that immediately after the accident he was hospitalized for ten days; that for seven weeks he was

unable to return to his work, and then only on a part-time basis; and that up to the time of the trial he had been able to work only three and a half days each week. The medical testimony was to the effect that because of deep injuries in the left gluteal area he has much difficulty in sitting down; that he suffers pain in the chest and pain and limitation of motion in the left arm and shoulder; that his previous back trouble has been aggravated by the recent injury; and that his earning capacity in his accustomed work has been permanently impaired. There was also evidence that he had incurred medical and hospital expenses as the result of the accident to the amount of $519.42; that his tools lost in the accident amounted in value to $3,375.00; and that his other property damage, including that to his van, amounted to $2,273.21.

This court will not strike down a verdict merely because its amount indicates undue liberality on the part of the jury. *Lipscomb v. Poole*, 247 S. C. 425, 147 S. E. (2d) 692. Its power to reverse the judgment of the trial court refusing to grant a new trial for excessiveness of the verdict should be exercised only in those rare cases in which the amount of the verdict is so shockingly excessive as manifestly to show that the jury was actuated by passion, partiality, prejudice or corruption. *Mock v. Atlantic Coast Line R. Co.*, 227 S. C. 245, 87 S. E. (2d) 830. The evidence in this case does not, in our opinion, warrant that conclusion.

Exceptions 2, 3 and 18 have not been argued, and are deemed to have been abandoned.

Affirmed.

LEWIS, Acting C. J. BUSSEY and BRAILSFORD, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.