**Frances Irene TODD, Appellant,**

v.

**Barbara C. JOYNER, Respondent.**

No. 4315.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2007.

Decided Nov. 27, 2007.

Withdrawn, Substituted, and Refiled Jan. 18, 2008.

510

512

Gene M. Connell, Jr., of Surfside Beach, for Appellant.

Linda Weeks Gangi, of Conway, for Respondent.

PER CURIAM.

Frances Irene Todd appeals several evidentiary rulings of the trial court as well as the trial court's denial of her motion for a new trial *nisi additur*. We affirm.[1]

## FACTS

On September 4, 2002, Todd and Barbara C. Joyner were involved in an automobile accident in Georgetown, South Carolina. As a result of injuries sustained in the accident, Todd brought this action. Joyner stipulated to her negligence in the case.[2]

On February 27, 2006, Joyner made Dr. Richard J. Friedman available for deposition as an expert in the field of orthopedic surgery. Friedman was not available to testify live at the trial, and a redacted version of his deposition was read into evidence. During the deposition, Todd questioned Friedman extensively about his private practice, the amount of his practice Friedman devoted to testifying as an expert witness,

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Although the terms liability and negligence appear to have been used somewhat interchangeably during the trial, it is clear that Joyner only stipulated to negligence as opposed to liability.

and the percentage of his income that came from testifying as an expert in an average year.

Friedman could not recall specifics in his responses at the time of the deposition, and Todd subsequently subpoenaed records from State Farm Insurance Company regarding payments made to Friedman. The records showed payments of between $50,000 and $60,000 to Friedman for the calendar years 2003 through 2005. The trial court denied their admission into evidence because of the prejudicial impact of injecting insurance into the proceeding.

Additionally, Todd objected to Friedman's use of Todd's medical records as the foundation of his testimony as well as Friedman's occasional reference to those records in his deposition. The trial court overruled this objection. Finally, Todd attempted to introduce, through cross-examination, a covenant not to execute entered into by Todd and State Farm. The trial court denied the covenant's introduction. The jury awarded Todd $37,191.11, the exact amount of her medical bills. Todd made a timely motion for a new trial *nisi additur*. The trial court denied the motion, and this appeal followed.

## LAW/ANALYSIS

### I. Admission of Evidence of Expert's Connection to State Farm

■ Todd maintains the court improperly excluded evidence of the prior payments State Farm made to Friedman, which would be evidence of bias in favor of the defendant.[3] We disagree.

■ The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Conner v. City of Forest Acres*, 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." *Id.*

---

3. This section addresses the arguments in Todd's brief labeled Arguments I and III.

Historically, South Carolina restricted the admission into evidence of defendants' insurance against potential liability in an action for damages before a jury. *Dunn v. Charleston Coca–Cola Bottling Co.*, 311 S.C. 43, 45, 426 S.E.2d 756, 757 (1993). The reasoning behind this rule was to avoid prejudice in the verdict, which might result from the jury's knowledge that insurance, and not the defendant, would be responsible for paying any resulting award of damages. *Id.* at 45, 426 S.E.2d at 757–58. However, "Rule 411 modified this rule by providing that the admissibility of evidence of insurance depends upon the purpose for which such evidence is introduced." *Yoho v. Thompson*, 345 S.C. 361, 365, 548 S.E.2d 584, 585 (2001). Rule 411 of the South Carolina Rules of Evidence provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Because Joyner stipulated to negligence, the records were not being offered to show that she was at fault. Rather Todd sought to use them to discredit the defense expert's testimony.

In *Yoho v. Thompson*, 345 S.C. 361, 365–66, 548 S.E.2d 584, 586 (2001) the court explained if Rule 411 does not require the exclusion of the insurance evidence, and we find in this case it does not, the court must then consider whether the probative value of the evidence substantially outweighs its prejudicial effect and any potential confusion for the jury under Rule 403. In order to accomplish this analysis, South Carolina has adopted the "substantial connection" test to determine whether an expert's connection to a defendant's insurer is sufficiently probative to outweigh the prejudice to the defendant resulting from the jury's knowledge that the defendant carries liability insurance. *Id.* at 366, 548 S.E.2d at 586 (citing *Bonser v. Shainholtz*, 3 P.3d 422 (Colo.2000); *Mills v. Grotheer*, 957 P.2d 540 (Okla.1998)). The substantial connection test has been adopted by a majority of the jurisdictions that have addressed this issue and is based upon the degree of

connection between the expert and the insurance company. *Id.*

The court in *Yoho* did not articulate a defined test, but instead described the characteristics present in the case that led it to the conclusion a substantial connection existed, and ultimately that the evidence of bias should come in. These characteristics included: (1) the expert maintained an employment relationship with insurance companies; (2) the expert consulted for the insurance company in question in other cases and gave lectures to its agents and adjusters; (3) ten to twenty percent of the expert's practice consisted of reviewing records for insurance companies; and (4) the expert's yearly salary was based in part on his insurance consulting work. *Id.* Further, the *Yoho* court specifically found the expert "was not merely being paid an expert's fee in this matter." *Id.*

The trial court distinguished *Yoho* from this case in several important aspects. First, the court found it significant the expert in *Yoho* was present for live testimony during the trial. This allowed the expert to be confronted about his connection to the insurance industry, instead of merely submitting an itemized list of payments into evidence. As described above, Friedman was not available for cross-examination at trial. Friedman could have been cross-examined with the records at his deposition, but Todd had not acquired the records at that point in time. We also note Friedman's bias was presented for the jury's consideration as his deposition testimony was read into the record. This recitation included the extensive cross-examination by Todd bringing out the issue of potential bias. As a result, the actual record of payments became less probative.

Next, the circuit court did not feel Friedman's relationship with State Farm rose to the level described in *Yoho* because the only available evidence of his connection to State Farm was an itemized list of payments totaling between fifty and sixty thousand dollars over the course of three years. The court found significant that no witnesses, including the two State Farm employees Todd called, could explain why these payments to Friedman were made. The combination of these factors led the circuit court to conclude "the prejudicial effect

of injecting this insurance information into this case greatly outweighs the probative value because . . . there's no opportunity to really do anything probative with this information; and it's really open to great latitude for abuse." We find the circuit court did not abuse its discretion in so holding.

## II.  Covenant Not to Execute

Todd next contends the circuit court erred in refusing to admit into evidence the covenant between Todd and State Farm.  We disagree.

Todd relies upon the lone South Carolina decision addressing the admissibility of a covenant not to execute, *Poston v. Barnes,* 294 S.C. 261, 363 S.E.2d 888 (1987).  In *Poston,* the plaintiff was injured when another driver struck a school van in which the plaintiff was a passenger.  The plaintiff, driver defendant, and the defendant's insurance company entered into a covenant not to execute. *Id.* at 263, 363 S.E.2d at 889. This covenant limited the defendant driver's liability for damages, while requiring her to remain a co-defendant, along with the school district, outwardly still subject to joint and several liability. *Id.* at 265, 363 S.E.2d at 890.  The court found the covenant was a facade, and the failure to disclose it to the jury tainted the judicial process. *Id.*

> [T]he jury was denied information to which it was entitled as to the sources of remuneration available to the plaintiff and by whom such remuneration would be paid.  The fact that the agreement was not disclosed to the jury in this instance facilitates inequity and injustice in the judicial process. . . .  Under the circumstances of this case, the agreement should have been allowed into evidence to insure that an equitable verdict was reached. *Id.*

We find this case readily distinguishable from *Poston.* Todd and Joyner were both insured by State Farm.  Todd entered into a covenant not to execute whereby she agreed not to execute against Joyner's personal assets and to take her recovery from Joyner's $25,000 liability policy, which was tendered, and Todd's own underinsured coverage.  So, at trial, Todd was essentially proceeding against her own insurance company.  Since naming the insurer is impermissible in this type of action, Joyner was the sole remaining party who could

serve as the named defendant. The primary circumstance that compelled the admission of the covenant into evidence in *Poston*, i.e., the possibility of jury confusion due to multiple parties defendant, is simply not present here.

Todd's position is based in part upon her contention that during the opening statement, Joyner's counsel alluded to Joyner's responsibility to pay the entire amount of the damages award. We find this contention is misplaced and taken out of context, as the crux of Joyner's opening statement did not focus on Joyner's personal responsibility for the damages. Rather, Joyner questioned the reasonableness of the medical costs Todd claimed were necessitated by the automobile accident. Because we find no evidence of an abuse of discretion amounting to an error in law in the record, we affirm the circuit court's decision to exclude the covenant.

### III.  New Trial *Nisi Additur*

Todd next asserts the circuit court erred in not granting *additur* to the jury's damages award, which only reimbursed Todd for her medical expenses. We disagree.

A trial court may grant a new trial *nisi additur* whenever it finds the amount of the verdict to be merely inadequate. *Green v. Fritz*, 356 S.C. 566, 570, 590 S.E.2d 39, 41 (Ct.App.2003). "While the granting of such a motion rests within the sound discretion of the trial court, substantial deference must be afforded to the jury's determination of damages." *Id.* To this end, the trial court must offer compelling reasons for invading the jury's province by granting a motion for additur. *Id.* An appellate court will only reverse if the trial court abused its discretion in deciding a motion for new trial *nisi additur* to the extent that an error of law results. *Id.* The denial of a motion for a new trial *nisi additur* is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *O'Neal v. Bowles*, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993). "The consideration of a motion for a new trial *nisi additur* requires the court to consider the adequacy of the verdict in light of the evidence presented." *Waring v. Johnson*, 341 S.C. 248, 257, 533 S.E.2d 906, 911 (Ct.App.2000). A trial court does not abuse its discretion in denying a motion for new trial *nisi*

*additur* where evidence in the record supports the jury's verdict. *See Steele v. Dillard,* 327 S.C. 340, 345, 486 S.E.2d 278, 281 (Ct.App.1997) (finding no abuse of discretion where the evidence in the record supports the amount of the jury award even though other evidence in the record indicated the jury could have awarded a larger verdict).

The jury awarded Todd $37,191.11, her exact medical costs. In the jury instructions, the circuit court provided the jury with a thorough explanation of how it could determine a monetary value for the damages to which it believed Todd was entitled. This included a full explanation of actual damages, including: "past and future medical charges related to the injury, pharmacy charges, related expenses, pain and suffering, loss of enjoyment of life, as well as mental anguish and impairment of health or physical condition." We find evidence in the record to support the jury's verdict. Joyner argued that all of Todd's claimed damages were not proximately caused by the accident and that all of the medical treatment was not reasonably necessary. Joyner cited the relatively low impact of the collision along with Todd's apparently limited injury immediately following the accident in support of her position. Because there was evidence in the record to support the jury's verdict, we find no error in the circuit court's denial of Todd's motion for new trial *nisi additur.*

## IV. Expert's Reliance on Medical Records During Deposition

Finally, Todd contends the circuit court erred in allowing an expert to read medical records to the jury during his testimony. We disagree.

The admission or rejection of testimony is largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion. *Pike v. S.C. Dep't of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401, SCRE. Relevant evidence may be excluded, however, if its probative value is

substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE.

Experts may testify regarding facts or data, not as substantive proof of the facts so stated, but rather as information upon which they have relied in reaching their professional opinions. *Gentry v. Watkins–Carolina Trucking Co.*, 249 S.C. 316, 324, 154 S.E.2d 112, 117 (1967). Rule 703, of the South Carolina Rules of Evidence provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Even if an expert's testimony is admissible under Rule 703, the determination of whether an expert may testify to the facts underlying an opinion must be analyzed under Rule 403. *State v. Slocumb*, 336 S.C. 619, 627, 521 S.E.2d 507, 511 (Ct.App.1999). Because any evidence of Todd's medical history would have a minuscule prejudicial effect, if any, as opposed to the high probative value it lends as the basis of Friedman's opinion, we agree with the circuit court's determination.

Finding no error of law, we conclude the circuit court did not abuse its discretion in allowing Friedman to opine as to the evidence contained within Todd's medical records.

## CONCLUSION

Based on the foregoing, we hold the circuit court did not err in failing to: (1) allow evidence to prove the bias of Joyner's expert; (2) admit the covenant not to execute between Todd and State Farm; and (3) grant Todd's new trial *nisi additur* motion. Further, the circuit court did not err in allowing Joyner's expert to testify as to the contents of Todd's medical records. The decision of the circuit court is accordingly

**AFFIRMED.**

SHORT and WILLIAMS, JJ., and CURETON, A.J., concur.