685 S.E.2d 595

**Frances Irene TODD, Petitioner,**

v.

**Barbara C. JOYNER, Respondent.**

**No. 26722.**

Supreme Court of South Carolina.

Heard June 9, 2009.

Re-filed Nov. 2, 2009.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, for Petitioner.

Linda Weeks Gangi, of Thompson and Henry, of Conway, for Respondent.

Justice PLEICONES.

This case stems from an auto accident in which Petitioner Frances Irene Todd was injured. A jury awarded Todd $37,191.11. Petitioner appealed and the Court of Appeals affirmed. *Todd v. Joyner*, 376 S.C. 114, 654 S.E.2d 862 (Ct.App. 2008).[1] We granted certiorari and, finding no error, now affirm the Court of Appeals.

## FACTS

A car driven by Joyner collided with a car in which Todd was a passenger. Todd sustained injuries and sued for damages. State Farm, Joyner's insurer, defended her at trial. Joyner admitted negligence and the trial court directed a verdict on liability. Consequently, the sole issue before the jury was the amount of damages owed Todd. In disputing Todd's claimed damages, Joyner presented Dr. Richard J. Friedman as an expert in orthopedic surgery. Because Dr. Friedman was unavailable during trial, his deposition testimo-

---

1. The Court of Appeals filed the original opinion in this matter on November 27, 2007. The Court of Appeals denied the petition for rehearing but withdrew the original opinion and substituted the above-referenced opinion, which makes only minor changes to the original version. Apparently, the new opinion was never submitted for publication. We now revise the citation to reference the re-filed opinion.

ny was read to the jury. At the deposition, Todd questioned Dr. Friedman concerning his relationship with State Farm, but Friedman was unable to provide answers to most questions. Dr. Friedman testified that he did not know the number of times he testified for other lawyers in defense cases or how many depositions he testified in per year. He explained that he does not keep records and routinely throws out invoices relating to past expert testimony once his bill is paid. Moreover, when asked what percentage of his practice was comprised of expert testimony, Dr. Friedman answered "very small" and outlined a typical busy work week which left "not much time ... for anything else."

Following the deposition, Todd subpoenaed payment records from State Farm for regarding Dr. Friedman's expert consultation in any case for the past three years. The records supplied showed that Friedman was paid between $50,000 and $60,000 for work on eighteen different claim numbers during calendar years 2003–2005. Todd attempted to introduce the payment records at trial as evidence of bias, but the trial judge refused, citing Rule 403 of the South Carolina Rules of Evidence (SCRE).

In his testimony, Dr. Friedman opined that Todd suffered no permanent impairment from the auto accident and that any treatment she received more than roughly four months after the accident was not reasonable and necessary or proximately caused by the accident. Dr. Friedman was the only expert whose testimony was offered at trial. At the conclusion of the trial, the jury found for Todd in the amount of $37,191.11, the amount of medical bills presented at the trial. Todd moved for *additur* and filed a motion for a new trial, both of which were denied.

Todd contested a number of evidentiary rulings by the trial court as well as the trial court's refusal to grant her motion for *additur*. The Court of Appeals affirmed the trial court's rulings on all points. *Todd*, 376 S.C. 114, 654 S.E.2d 862. We granted certiorari.

## ISSUES

I. Did the Court of Appeals err in affirming the trial court's decision to bar the introduction of evidence of payments made by State Farm to the expert?

II. Did the Court of Appeals err in affirming the trial court's decision allowing Joyner's expert to read from Todd's medical records during his testimony?

## DISCUSSION

### I. *Yoho v. Thompson*

On certiorari, Todd argues that the Court of Appeals erred in affirming the trial court's refusal to allow introduction of the payment records because the records were properly admissible to show bias under *Yoho v. Thompson,* 345 S.C. 361, 548 S.E.2d 584 (2001). We disagree.

Prior to 1995, the long-standing rule in South Carolina was that, in an action for damages, a defendant's insurance coverage should not be revealed to the jury. *Yoho,* 345 S.C. at 365, 548 S.E.2d at 585. Rule 411 of the South Carolina Rules of Evidence (SCRE) altered the bar on evidence of insurance and provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Rule 411, SCRE (2008).

In *Yoho,* we adopted a framework for analysis in considering whether or not to admit evidence of insurance. We held that if Rule 411 does not require the exclusion of evidence of insurance, the court should then proceed to perform Rule 403 analysis and consider whether the probative value of the evidence is substantially outweighed by the prejudicial effect and potential for confusing the jury. *Yoho,* 345 S.C. at 365, 548 S.E.2d at 586. As liability was admitted in this case, Rule 411 is not implicated and the question whether the records are admissible turns on Rule 403.

In considering whether an expert's connection to a defendant's insurer is sufficiently probative to outweigh the prejudice to the defendant resulting from the jury's knowledge that the defendant carries liability insurance, this Court adopted

the "substantial connection" analysis employed in a majority of jurisdictions. *Id.* at 366, 548 S.E.2d at 586. Applying the "substantial connection" test, the *Yoho* Court noted (1) that the expert was not merely paid an expert fee in the case but instead maintained an employment relationship with the insurance company and other insurance companies; (2) the expert consulted for the insurance company and gave lectures to its agents and adjusters; (3) 10–20% of the expert's practice consisted of reviewing records for insurance companies; and (4) the expert's yearly salary was based in part on his insurance consulting work. *Id.* Based on these facts, the *Yoho* Court found that the expert had a substantial connection to the insurance company and therefore, the trial court erred in barring admission of evidence of insurance. *Id.*

Todd showed, through payment records and the testimony of Potts, that Dr. Friedman earned approximately $50,000 from State Farm during calendar years 2003–2005 based on work on eighteen claims, but presented no evidence as to Dr. Friedman's total earnings during that period. Moreover, unlike *Yoho*, the evidence appears to show that Dr. Friedman was paid an expert fee rather than having an employment relationship with State Farm. In short, the evidence presented by Todd does not show as strong a connection between the expert and the insurance company as in *Yoho* and we cannot conclude that the Court of Appeals erred in affirming the trial court.

## II. Medical Records

Todd contends that the Court of Appeals erred in upholding the trial court's decision allowing Dr. Friedman to read from Todd's medical records at trial. We disagree.

During the deposition, which was read to the jury at trial, Dr. Friedman was asked to comment on the reasonableness of Todd's medical treatment and whether injuries Todd claimed resulted from the car accident actually existed before that time. Dr. Friedman based his opinions, in part, on a review of Todd's medical records and, in explaining his opinions, Dr. Friedman referenced Todd's medical records a number of times and occasionally read from the records. Since Dr. Friedman's testimony centered on the idea that injuries Todd

claimed resulted from the wreck actually existed prior to the accident, most of the portions of the records read by Dr. Friedman referred to Todd's statements or complaints to her doctors.[2]

At trial, Todd objected to Dr. Friedman's testimony as to medical records as hearsay. We find no error. We find that the records introduced through Dr. Friedman's testimony referring to complaints or statements Todd made to her physicians are not barred by the hearsay rule. Rule 803, SCRE provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment; provided, however, that the admissibility of statements made after commencement of the litigation is left to the court's discretion.

Rule 803(4), SCRE (2008). The medical history referenced by Dr. Friedman falls within the ambit of Rule 803(4) and therefore, does not run afoul of the hearsay rule. The Court of Appeals, therefore, did not err in affirming the trial court's decision to allow the testimony.

## CONCLUSION

We find that the Court of Appeals did not err in affirming the trial court's finding that Todd did not show a "substantial connection" between State Farm and Dr. Friedman to require admission of evidence of insurance. We further find no error in the decision to allow Dr. Friedman to refer to Todd's medical records, and therefore affirm on this ground. We affirm all remaining issues under Rule 220(c).

**AFFIRMED.**

---

**2.** For example, Dr. Friedman testified that Todd "did complain of headaches to her doctor on March 19th, 1998."

TOAL, C.J., WALLER, J., and Acting Justice E.C. BURNETT, III, concur.

BEATTY, J., dissenting in a separate opinion.

Justice BEATTY.

I respectfully dissent. Dr. Friedman was employed by State Farm on eighteen different occasions over a three year period immediately prior to trial. This employment relationship clearly constitutes a substantial connection between State Farm and Dr. Friedman. Evidence of this substantial connection should have been admitted to show possible bias on Dr. Friedman's part. *See Yoho v. Thompson*, 345 S.C. 361, 548 S.E.2d 584 (2001) (holding evidence of a defense expert's medical consulting work for an insurance carrier was admissible, even though the evidence contained a reference to insurance, because considerable latitude is allowed during cross-examination to test a witness's bias, prejudice, or credibility).

The probative value of this evidence far outweighed its prejudicial effect. *See id.* at 366, 548 S.E.2d at 586 (stating that a substantial connection between an expert and a defendant's insurer is sufficiently probative on the issue of bias so as to outweigh the prejudice to the defendant resulting from the fact that the jury knows the defendant carries liability insurance). Considering the fact that liability insurance has been required in South Carolina for decades, *see* S.C.Code Ann. §§ 56–10–10, –20, –220 (2006), it is highly probable that every juror already knew that insurance was available. The only unknown was the name of the carrier. Therefore, it is probable that there was no prejudicial effect to be concerned with.

Connecting Dr. Friedman to the insurance carrier was highly probative on the issue of his bias in favor of the insurance carrier, State Farm, and Joyner. In my view there was very little, if any, unfair prejudice to Joyner.

I concur in the remaining issues.