# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Shannon P. Green and Darrell Russell, Plaintiffs,

v.

Edward C. McGee and David Hudgins, Respondents,

Of whom Shannon P. Green is the Appellant/Respondent

And

Of whom David Hudgins is the Respondent/Appellant.

Appellate Case No. 2020-000203

Appeal From Spartanburg County
Grace Gilchrist Knie, Circuit Court Judge

Opinion No. 6001
Heard March 1, 2023 – Filed July 26, 2023

## AFFIRMED IN PART AND REVERSED IN PART

Douglas A. Churdar, of Churdar Law Firm, of Greenville, for Shannon P. Green.

Jessica Waller Laffitte and Curtis Lyman Ott, both of Gallivan, White & Boyd, PA, of Columbia, for David Hudgins.

Michael T. Coulter, of Clarkson, Walsh & Coulter, PA, of Greenville, for Edward C. McGee.

**HEWITT, J.:** This case arises out of an unusual car wreck. David Hudgins and Edward McGee were both driving on the interstate. Each claimed the other was driving dangerously. Hudgins called 9-1-1 and began following McGee. The pursuit eventually left the interstate and continued on surface streets. Not long after that, McGee crashed into Shannon Green.

Green sued Hudgins and McGee, claiming both were at fault for the wreck even though the only collision was between McGee's vehicle and hers. She won a verdict of roughly $88,000 actual damages, punitive damages of $35,000 against McGee, and punitive damages of $35,000 against Hudgins. She appealed. Hudgins, the instigator of the vehicular pursuit, filed a cross-appeal.

The main issue in the case is how to properly account for Green's $100,000 pretrial settlement with McGee's insurance carrier. Both Green and Hudgins argue the trial court erred on this point, but they reach different conclusions. Green argues the trial court impermissibly converted the separate punitive awards to a joint award and that she is due more money, not less. Hudgins argues that his liability to Green is completely extinguished because even though the jury awarded Green more than $100,000 in damages, Hudgins' share of the judgment is less than the $100,000 Green has already received.

We agree that the trial court's setoff calculation was not correct, but we disagree with Hudgins' argument that this extinguishes all of his liability to Green. We respectfully disagree with the parties' remaining arguments for reversal.

## FACTS

It is not necessary to describe much more of the background leading up to the crash. Both Hudgins and McGee said traffic on the interstate was heavy. McGee claimed he was stuck behind Hudgins and that Hudgins slammed on his brakes three times, almost causing the vehicles to collide. When the interstate expanded from two lanes to three, McGee changed lanes and hurriedly passed Hudgins. Hudgins called 9-1-1 to report McGee's driving and followed McGee.

McGee said he could see Hudgins following him and that this made him feel uncomfortable. Both McGee and Hudgins pled guilty to driving too fast for conditions.

Green testified she did not remember the collision. She woke up with broken glass in her mouth and had difficulty breathing. She said she thought she was going to

die. Green sustained two broken ribs and damage to the bicep in her left arm. She had her left arm in a sling for six weeks and testified that she had to temporarily rely on her husband for assistance with some normal daily functions. The extent to which her injuries limited her ongoing activities of daily living was disputed.

The jury found McGee sixty percent at fault and Hudgins forty percent at fault. The precise award for actual damages was $88,546.78. We mention this because one of the issues in this case relates to the fact that Green offered the same exact number to the jury as the direct financial costs to her from the wreck.

The jury also heard the claim brought by Green's husband for loss of consortium. There, the jury returned a defense verdict.

Green filed a post-trial motion seeking a new trial nisi additur. She also asked the trial court to allocate some of the $100,000 settlement with McGee to her husband's consortium claim.

Hudgins filed a post-trial motion seeking a ruling releasing him from all liability, releasing him from punitive damages, and (if nothing else) a setoff of the jury's verdict on account of Green's settlement with McGee.

The trial court denied all motions except the motion for setoff. The court calculated the setoff by adding the actual damages award (again, roughly $88,000) and both punitive damages awards ($35,000 each) for a total verdict of roughly $158,000. Then, the court subtracted the $100,000 settlement. This left about $58,000 in damages remaining. The trial court held this would be shared by the defendants and allocated 60/40 between them according to the fault assigned by the jury.

**GREEN'S ISSUES**

1. Whether the trial court abused its discretion by declining to grant a new trial nisi additur based on Green's argument that the award for actual damages is the precise amount of her economic loss with no award for pain and suffering.

2. Whether the trial court should have allocated some of Green's $100,000 settlement with McGee to Green's husband's loss of consortium claim.

3. Whether the trial court erred in dividing the punitive damage awards against McGee and Hudgins on a pro rata basis.

## HUDGINS' ISSUES

4. Whether the trial court erred in declining to set aside the verdict against Hudgins in its entirety.

5. Whether the trial court erred in declining to set aside the punitive verdict against Hudgins.

6. Whether the trial court erred in rejecting the argument that the proper application of the setoff for Green's settlement with McGee precludes Green from recovering anything against Hudgins.

## NEW TRIAL *NISI ADDITUR*

Green argues the trial court abused its discretion in declining to grant additur. She says it is evident the jury's award of actual damages does not include anything for her pain and suffering.

Our task does not involve deciding whether we agree with the jury's verdict or whether we agree with the circuit court's decision to let the jury's verdict stand. The standard of review is highly deferential. *See Burke v. AnMed Health*, 393 S.C. 48, 56, 710 S.E.2d 84, 88 (Ct. App. 2011) ("A jury's determination of damages is entitled to 'substantial deference.'" (quoting *Todd v. Joyner*, 385 S.C. 509, 517, 685 S.E.2d 613, 618 (Ct. App. 2008), *aff'd*, 385 S.C. 421, 685 S.E.2d 595 (2009))); *id*. ("The decision to grant or deny a 'new trial motion rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law.'" (quoting *Brinkley v. S.C. Dep't of Corr.*, 386 S.C. 182, 185, 687 S.E.2d 54, 56 (Ct. App. 2009))); *id*. at 57, 710 S.E.2d at 89 ("'The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion.'" (quoting *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006))); *see also Bailey v. Peacock*, 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995) ("If an award is merely inadequate or unduly liberal, the trial judge alone has the discretion to grant a new trial *nisi additur*.").

We must defer to the jury and the trial court. Despite the fact the actual damages award corresponds exactly (to the cent) with the exhibit Green offered for her economic damages, we do not know, and the jury was not asked, whether the jury limited Green's damages in this way. The jury found Green had no fault in the wreck, and there is no doubt she received serious injuries in the wreck, but causation was

an issue for treatment and ongoing pain because Green had pre-existing medical ailments. The trial court believed the verdict was appropriate and declined to invade the jury's province. We do not see how we can question that determination given our standard of review.

Green argues this court's decision in *Waring v. Johnson* establishes that we need look at nothing more than the fact that the actual damages award corresponds exactly with Green's offered economic damages. *See* 341 S.C. 248, 260, 533 S.E.2d 906, 912 (Ct. App. 2000). As we see it, the key to *Waring* is that this court was reviewing a grant of additur rather than the denial of it. *Id*. at 256-61, 533 S.E.2d at 910-13. The standard of review is weighted in favor of affirming the trial court's decision; no doubt because that court possesses a superior sense of the case having presided over the trial. Just as the standard of review led this court to affirm in *Waring*, so too it leads us to affirm here.

## ALLOCATING FUNDS TO THE CONSORTIUM CLAIM

As already noted, Green argues the trial court erred by not attributing some of her $100,000 settlement with McGee's insurance carrier to her husband's consortium claim. This argument draws on the principle that funds previously paid to the plaintiff mandate a reduction in the amount of the plaintiff's claim against other tortfeasors causing the same injury. *See, e.g.*, S.C. Code Ann. § 15-38-50 (2005) (codifying the right to setoff). If it is true that some of the settlement was compensation for injuries to Green's husband, this would reduce the settlement funds attributed to Green and the offset to which Hudgins is entitled.

Precedent explains that when a settlement involves multiple claims, the trial court "must make the factual determination of how to allocate the settlement between the [] claims." *Smith v. Widener*, 397 S.C. 468, 473, 724 S.E.2d 188, 191 (Ct. App. 2012); *see also Rutland v. S.C. Dep't of Transp.*, 400 S.C. 209, 216, 734 S.E.2d 142, 145 (2012) (reallocating settlement funds the parties attributed to a survival claim when there was no evidence of pain and suffering). Here, however, it does not appear that Green's settlement with McGee's insurance company involved multiple claims. The facts are confusing. The same day Green received the full limits of $100,000 under McGee's liability policy, Green's husband signed his own covenant not to execute against McGee in exchange for $2,500. Green argues this $2,500 was not for her husband's consortium claim, but there is no limiting language in the settlement documents we have in the record.

Beyond that, the jury returned a defense verdict on the consortium claim. We were not able to locate a case authorizing a judge, sitting after the verdict, to allocate settlement funds to a claim after the jury determines the claim has no value. The situation would be different if there had been an allocation before the jury spoke. In *Riley v. Ford Motor Co.*, for example, our supreme court upheld a pretrial allocation of settlement funds to a survival claim even though the plaintiff later withdrew that claim during the trial. 414 S.C. 185, 197-98, 777 S.E.2d 824, 831 (2015). Green's argument that setoff is equitable in nature and should be based on all of the circumstances is a correct statement of precedent. Here, however, the trial court was asked to allocate settlement money to a claim after the jury rejected it. Again, we are not presented with any authority suggesting it was error for the trial court to decline this request.

**MOTIONS TO SET VERDICTS AGAINST HUDGINS ASIDE**

Hudgins offers several reasons the trial court erred in denying his motions to set the verdict against him aside in its entirety, or at least to set the punitive damages award aside. He argues a wholesale reversal is required because (1) the only reasonable inference is that McGee was the sole cause of the wreck; (2) a reasonable jury could not conclude he (Hudgins) breached a duty or proximately caused the wreck; (3) McGee was an independent intervening cause and Hudgins was a remote cause rather than a proximate cause; and (4) a jury could not determine that Green's injuries were proximately caused by the wreck because Green did not present medical evidence supporting causation. He argues the punitive award cannot stand because no reasonable jury could find that his behavior was willful, wanton, or reckless by clear and convincing evidence.

The record supports the trial court's decision denying these motions. *See Burns v. Universal Health Servs., Inc.*, 361 S.C. 221, 232, 603 S.E.2d 605, 611 (Ct. App. 2004) ("The appellate court will reverse the trial court's ruling on a JNOV motion only when there is no evidence to support the ruling or where the ruling is controlled by an error of law."); *id.* ("The verdict will be upheld if there is any evidence to sustain the factual findings implicit in the jury's verdict."); *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998) ("A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict.").

McGee testified Hudgins followed him after he passed Hudgins on the interstate. McGee said he was concerned for his safety and feared Hudgins might harm him if he pulled over. Hudgins disputed that he was "following" McGee, but other evidence suggested this denial was not truthful. The encounter between Hudgins

and McGee lasted for an extended period of time over different roadways, and while Hudgins claimed he was driving this route on purpose, he told authorities during his phone call with them that he did not know where he was. After the wreck, Hudgins can be heard on the 9-1-1 recording driving past McGee and telling McGee that he had the police coming for him. It was reasonable for the jury to find Hudgins chased or followed McGee, which made McGee distracted and nervous, and therefore made Hudgins a proximate cause of the collision. As for punitive damages, we need go no further than Hudgins' guilty plea to driving too fast for conditions, which is some evidence that Hudgins acted recklessly, willfully, and wantonly. *See Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 315, 594 S.E.2d 867, 875-76 (Ct. App. 2004) ("Violation of a statute does not constitute recklessness, willfulness, and wantonness per se, but is some evidence the defendant acted recklessly, willfully, and wantonly. . . . The jury determines whether a party has been reckless, willful, and wanton.").

## SETOFF AND PUNITIVE DAMAGES

We come now to the remaining setoff arguments. Green argues the trial court erred in its setoff calculation by crediting the settlement against the entire verdict and dividing the unsatisfied punitive damage awards on a pro rata basis. Hudgins argues that he has no liability to Green because the $100,000 settlement exceeds his share of the actual damages and the punitive damage award against him.

Setoff comes from the principle that "there can be only one satisfaction for an injury or wrong." *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 113, 498 S.E.2d 395, 407 (Ct. App. 1998) (quoting *Truesdale v. S.C. Highway Dep't.*, 264 S.C. 221, 235, 213 S.E.2d 740, 746 (1975)). By statute, a settlement with a joint tortfeasor "reduces the claim against the others to the extent of any amount stipulated by the release or the covenant." S.C. Code Ann. § 15-38-50(1) (2005). Precedent instructs that before entering judgment on a jury verdict, the court must reduce the amount of the verdict to account for any funds previously paid by a settling defendant, so long as the settlement funds were paid to compensate the same plaintiff on a claim for the same injury. *Hawkins*, 330 S.C. at 113, 498 S.E.2d at 406-07. When the settlement is for the same injury, the non-settling defendant's right to a setoff arises by operation of law. *Ellis v. Oliver*, 335 S.C. 106, 112, 515 S.E.2d 268, 271 (Ct. App. 1999).

Hudgins argues that the setoff statute compels the court to find that his liability to Green is extinguished. The statute says that a settlement reduces the amount of a plaintiff's claim against "other tortfeasors." § 15-38-50(1). Green's underinsured

motorist (UIM) carrier took over litigating McGee's part of the case after McGee's liability carrier settled. Hudgins has $1 million in liability coverage and no funds have been paid on his behalf towards the verdict. Even so, he argues a UIM carrier is not a tortfeasor and that as the only tortfeasor, he is entitled to credit the $100,000 settlement towards his share of the liability.

We respectfully reject this argument. We note our supreme court's statement in *Riley* that the Uniform Contribution Among Tortfeasors Act codified the "equitable principles" of setoff. 414 S.C. at 195, 777 S.E.2d at 830. *Riley* also noted that setoff "should be exercised so as to do justice between parties." *Id.* (quoting *Rookard v. Atlanta & Charlotte Air Line Ry. Co.*, 89 S.C. 371, 71 S.E. 992, 995 (1911)). We think it plain that neither justice nor equity support giving Hudgins—who did not settle and has paid no money—the benefit of settlement funds that were paid on McGee's behalf before those funds are credited to McGee's share of the verdict. After all, precedent explains that when a liability insurance carrier provides funds for a settlement, the funds are provided to benefit its insured. *Cobb v. Benjamin*, 325 S.C. 573, 579, 482 S.E.2d 589, 592 (Ct. App. 1997).

In many cases, if not most, a settling defendant will not be a party when the jury decides the case, and will thus not be listed on the verdict form and will not receive an allocation of comparative fault. *E.g., Smith v. Tiffany*, 419 S.C. 548, 799 S.E.2d 479 (2017) (joint tortfeasor who settled was not to be included in the jury's apportionment of fault). In deciding the case, the jury is tasked with determining the total amount of the plaintiff's damages (if any). S.C. Code Ann. § 15-38-15(C)(1) (Supp. 2022). The setoff for funds paid on the same injury are then applied to the verdict in proportion to each defendant's percentage of liability as found by the jury. § 15-38-15(E).

Here, we face a situation where a joint tortfeasor—McGee—remained a defendant and received an allocation of fault notwithstanding the settlement on his behalf. We are keenly mindful that the legislature's word with respect to public policy is final. *Tiffany*, 419 S.C. at 559, 799 S.E.2d at 485. Still, the result Hudgins seeks to achieve is so far from the equitable purpose of setoff—he seeks to pay nothing even though the verdict plainly exceeds his co-defendant's coverage—that his interpretation is an interpretation we cannot follow.

We still face the question of how the $100,000 should be allocated between the various parts of the verdict. Should it apply first to McGee's sixty percent of the actual damages award and then to McGee's punitive award before the excess is credited to Hudgins, or should it follow some other allocation?

We approach this question mindful of the fact that this case involves a settling tortfeasor who remained a defendant and was allocated a percentage of fault by the jury. We are also mindful of precedent's explanation that though the relevant statutes were not designed to achieve perfect equity, they were designed to promote and foster settlements. *See Tiffany*, 419 S.C. at 557, 799 S.E.2d at 484 (citing *Riley*, 414 S.C. at 196, 777 S.E.2d at 830).

The jury determined that the wreck caused Green to suffer $88,000 in actual damages and that sixty percent of the fault belonged to McGee. The jury also found McGee liable for $35,000 in punitive damages. The principles above dictate that the $100,000 should be allocated first to McGee's share of the actual damages, then to the punitive award against him. After that, the excess should be credited to the judgments against Hudgins.

We have already explained why we reject one of the alternative approaches. Suppose the jury entered the same allocation of fault but found actual damages of $200,000 rather than the $88,000 awarded here. Hudgins would say he still owes Green nothing because he believes Green's claim against him (forty percent of $200,000) should be reduced by the $100,000 Green received from McGee. There, as here, extinguishing Hudgins' liability is so at variance with the equitable purpose of setoff we do not think the legislature could have intended it.

The other alternative approach would be to first apply the settlement funds to the entire actual damages award (as the trial court did here), and then to the punitive awards against McGee, Hudgins, or both. We reject this alternative because, as with the other, it is contrary to the principles of setoff. Setoff is designed to prevent a plaintiff from recovering more than one share of her damages, not to prevent a plaintiff from recovering damages the jury determined she was entitled to recover. Hudgins has sufficient liability coverage to satisfy the awards against him. The equitable principles codified in the statute dictate that McGee receive first credit for funds paid on his behalf, and that the excess be applied to the judgment against Hudgins.

The jury determined Green's total actual damages were $88,546.78. The sixty percent allocated to McGee is $53,128.07. When added to the $35,000 in punitive damages, McGee's liability would be $88,128.07. Applying the $100,000 settlement to McGee's liability leaves $11,871.93 in remaining settlement funds that are allocated to Hudgins' liability. Hudgins' forty percent share of the actual damages award comes to $35,418.71. Subtracting the remaining settlement funds leaves

Hudgins responsible for $23,546.78 in actual damages and $35,000 in punitive damages. Hudgins' total remaining liability (exclusive of any applicable interest) is $58,546.78.

**CONCLUSION**

Based on the foregoing, the trial court's judgment is

**AFFIRMED IN PART and REVERSED IN PART.**

**THOMAS and MCDONALD, JJ., concur.**