640 S.E.2d 467

**John Temple LIGON, Appellant,**

v.

**Jeff NORRIS and Affinity Technology Group, Inc., Respondents.**

**No. 4170.**

Court of Appeals of South Carolina.

Heard Sept. 14, 2006.

Decided Oct. 30, 2006.

Rehearing Denied Jan. 29, 2007.

---

628

William C. Cleveland and Thomas P. Guerard, both of Charleston, for Appellant.

Jacquelyn Lee Bartley, Robert L. Widener and Jane W. Trinkley, all of Columbia and Mark P. Henriques, of Charlotte, NC, for Respondents.

STILWELL, J.:

John Temple Ligon filed this breach of contract action against Jeff Norris and Affinity Technology Group, Inc., seeking over $5 million in damages. A jury awarded Ligon $382,148. Based on the jury's response to post-verdict interrogatories, the trial court set aside the verdict and entered judgment for the defendants. Ligon appeals. We reinstate the verdict.

## FACTUAL BACKGROUND

In 1993, Ligon and Norris were classmates at Duke University's business school. Norris approached Ligon and numerous other students and faculty members, explaining his idea for an automated teller machine that would bypass lengthy loan processes and immediately dispense proceeds of a loan.

Ligon had many contacts with potential investors in his home town of Columbia, South Carolina. During a telephone conversation in June of 1993, in exchange for Ligon's assistance in raising capital, Norris allegedly offered Ligon a one percent interest in a startup company to be created to develop the concept.

Ligon introduced Norris to numerous influential people. Although none of them ultimately invested in the company, they assisted Norris in securing a lender, provided free office space, and introduced Norris to other potential investors. Dick Bannon, a contact provided by Ligon, served as chief financial officer and advised Norris on how to structure the company.

In November 1993, Norris started the company as U.S. Loan, Inc. Ligon and Bannon became members of the board of directors. In January of 1994, based on Bannon's advice, U.S. Loan was dissolved and Affinity Financial Group, Inc. was incorporated in Delaware.

In March or April of 1994, Norris asked both Bannon and Ligon to leave Affinity. According to Ligon, Norris assured Ligon his one percent interest in the company was secure. Later that year, during a telephone conversation between Norris and Ligon, Ligon became concerned that Norris would not honor the oral contract. Ligon therefore sent a letter to Duke University offering half of his one percent interest in Affinity in exchange for relief from a tuition debt. By letter dated September 21, 1994, Norris informed Duke that Ligon had no interest in Affinity. Norris sent a copy of the letter to Ligon.

During the ensuing two years, restricted shares of stock in the company were issued to various Affinity employees including Norris. Affinity offered common shares to the public on April 26, 1996. The parties later stipulated that a one percent

interest at that time was worth $5,468,881. Ligon did not receive any stock from Norris or Affinity and consequently filed this action.

The matter was tried before a jury in July of 1998. The jury rendered verdicts in favor of Ligon against Affinity for $48,000 and against Norris for $20,000. The trial court granted Ligon a new trial absolute. On appeal, this court affirmed in an unpublished opinion.

During a pre-trial motions hearing at the second trial, Ligon argued he was proceeding on an 'all or nothing' theory of recovery, asking for damages of $5,468,881, the value of one percent of the stock at the time of public issuance. He accordingly moved to exclude any evidence of stock valuations at any other time. The court granted the motion. During the trial, however, the jury saw and heard both evidence and arguments regarding stock values to which Ligon may have been entitled at times other than the date of the initial public offering. After lengthy discussion at a charge conference, the trial court decided, without objection from either party, to submit a general verdict form rather than special interrogatories for the jury's consideration. The jury returned a verdict in favor of Ligon for $382,148. Thereafter, and once again following extensive discussion and consultation, the trial court submitted special interrogatories to the jury to assist the court in ruling on post-trial motions. The jury answered the interrogatories finding a contract had been breached, but Ligon was not entitled to a one percent interest in the company at the time of the initial public offering.

Ligon moved, *inter alia*, for judgment notwithstanding the verdict (jnov), new trial *nisi additur*, or new trial absolute. The defendants moved for entry of judgment in conformance with the special interrogatories, jnov, or new trial absolute. The trial court set aside the verdict and entered judgment for the defendants.

## ISSUES ON APPEAL

Ligon raises four issues on appeal, asserting 1) the trial court erred in denying his motion for jnov; 2) the trial court erred in denying his motion for new trial *nisi additur* based on the jury's responses to the special interrogatories; 3) the

verdict and responses to special interrogatories are irreconcilable, thereby entitling Ligon to a new trial absolute; and 4) the trial court erred in entering judgment in favor of the defendants and should reinstate the monetary verdict.

## LAW/ANALYSIS

### JNOV

Ligon argues the trial court erred in denying his motion for jnov. Ligon asserts the only "legally valid amount of damage" is $5,463,881. We disagree.

In ruling on a motion for jnov, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. The motion should be denied where either the evidence yields more than one inference or its inference is in doubt. The trial court can only be reversed when there is no evidence to support the ruling. *McMillan v. Oconee Mem'l Hosp., Inc.,* 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006).

Ligon claimed entitlement to valuation of one percent of the company as of the date of the public stock offering. Although a preliminary business plan mentioned common stock at the time of the initial public offering, there is evidence of other valuation dates and methods in the record including the prospectus and testimony. Ligon's own testimony was inconsistent regarding the manner and time of valuation. Ligon admitted the parties did not discuss when the stock would be valued. Ligon acknowledged his ownership share "could go any number of ways, which was not discussed" at the time of the formation of the contract. Ligon testified he was entitled to the same amount Peter Wilson received. According to the prospectus, entered into evidence by Ligon, Wilson and other early investors and employees acquired stock as early as October of 1994, more than a year before the initial public offering. Finally, Norris testified, without contemporaneous objection, that Ligon's alleged one percent interest would have been diluted by subsequent investors.

Thus, regardless of the trial court's rulings excluding evidence of any valuation time or manner other than as

common stock at the time of the initial public offering, the jury heard evidence of other valuation times and methods. Furthermore, despite the court's ruling prohibiting the defendants from arguing alternate valuations in closing, Affinity argued, without objection from Ligon, that "Ligon expected to get stock at the date of the first venture capital ... in July of 1994" and that "numerous others in like circumstances received restricted stock rather than the common stock issued at the initial public offering." [1]   Also without objection, the charge to the jury on the subject of damages was the classic general law of damages applicable to a breach of contract action, and excluded any reference to the stipulated value of one percent of the company at the time of the initial public offering.  Finally, the stipulation itself stated the value of one percent of the company on the date of the public offering but did not state that an award of damages was limited to that value.  While there was considerable discussion among the attorneys and the trial court about the "all or nothing" theory of recovery, none of the discussion was held while the jury was present.  Thus, the jury was not privy to Ligon's "all or nothing" demand.

The jury apparently determined the valuation of Ligon's interest in the company should have been calculated at a time other than the date of the initial public offering or for an amount other than the stipulated value.  As there was evidence in the record to support such a finding, the trial court did not err in denying Ligon's motion for jnov.

## ADDITUR

■  Ligon also argues the trial court erred in denying his motion for new trial *nisi additur* in reliance on the jury's responses to the special interrogatories.  We disagree.

After the jury rendered its general verdict of $382,148, the court submitted the following special interrogatories to the jury, and received the indicated responses:

---

1.  Ligon argues error arising from Affinity's closing argument.  However, Ligon failed to timely object to the closing argument.  When a party fails to make a timely objection to an improper closing argument, the issue is not preserved for appellate review.  *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 159, 345 S.E.2d 711, 714 (1986).

Question 1: In reaching your verdict, do you unanimously find that a contract was formed between the Plaintiff and the Defendants?

X    Yes
___

    No
___

Question 2: If you answered yes to Question 1, do you unanimously find that the contract was for Plaintiff to receive 1% of Affinity Technology at the time of the initial public offering?

    Yes
___

X    No
___

Ligon first asserts the issuance of special interrogatories to the jury after it rendered a general verdict constituted error. Ligon also argues the interrogatories were confusing because a negative response to either question could be interpreted in more than one way. Ligon asserts the jury's response to the second question could indicate either the jury was not unanimous in its verdict, or the jury did not find the contract was for one percent at the time of the initial public offering.

We find Ligon failed to preserve the issue of the trial court's submission of the interrogatories after the general verdict was returned.[2] Although Ligon initially objected to the submission of interrogatories, the trial court and the parties' attorneys discussed the issue and Ligon eventually stated: "I withdraw my objection. I think that's the appropriate way to go." An objection withdrawn at trial constitutes an express waiver of the issue and does not preserve the issue for appellate review. *Rosamond Enters., Inc. v. McGranahan,* 278 S.C. 512, 513, 299 S.E.2d 337, 338 (1983); 75 Am.Jur.2d *Trial* § 422 (1991).

Ligon also argues the interrogatories are flawed because they include the term "unanimously," and a negative answer to either question could be interpreted as an answer regarding unanimity or an answer regarding the ultimate question. We find the interrogatories were not so confusing as to necessitate reversal on this issue.

___

2. As the issue is not preserved, we make no ruling on the propriety of this unusual procedure.

■ Interrogatories must be considered in conjunction with the jury instructions. *Fortune v. Gibson,* 304 S.C. 279, 282, 403 S.E.2d 674, 675 (Ct.App.1991). During general charges to the jury, the trial court instructed that the verdict must be unanimous. Again when the special interrogatories were submitted to the jury, the court instructed the jury to answer "collectively and unanimously." When considered with the jury instructions, we find no prejudice to Ligon based on the wording of the interrogatories. *See State v. Myers,* 344 S.C. 532, 536, 544 S.E.2d 851, 853 (Ct.App.2001) (affirming where "clear and cogent jury instructions ameliorated any possible prejudice" stemming from interrogatories).

■ Finally, Ligon argues the trial court erred in denying *additur* based solely on the answers to the interrogatories rather than based on the evidence at trial. Even if the trial court erred in relying on the interrogatories, there is evidence in the record to support the trial court's decision to deny *additur.*

■ The trial court has the power to grant a new trial *nisi additur* when it finds the amount of the verdict to be merely inadequate. *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993). The denial of a motion for a new trial *nisi additur* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion. *Id.* The consideration of a motion for a new trial *nisi additur* requires the court to consider the adequacy of the verdict in light of the evidence presented. *Waring v. Johnson,* 341 S.C. 248, 257, 533 S.E.2d 906, 911 (Ct.App.2000). A trial court does not abuse its discretion in denying a motion for new trial *nisi additur* where there is evidence in the record to support the jury's verdict. *See Steele v. Dillard,* 327 S.C. 340, 345, 486 S.E.2d 278, 281 (Ct.App.1997) (finding no abuse of discretion where the evidence in the record supports the amount of the jury award even though other evidence in the record indicated the jury could have awarded a larger verdict).

As discussed in addressing the trial court's denial of Ligon's motion for jnov, we find evidence in the record to support the jury's verdict. Accordingly, we find no error in the trial court's denial of Ligon's motion for new trial *nisi additur.*

## NEW TRIAL ABSOLUTE

Ligon next argues the trial court should have granted him a new trial absolute based on the allegedly flawed interrogatories. We disagree. The trial court may grant a new trial absolute if the judge believes the verdict is not supported by the evidence. *Folkens v. Hunt*, 300 S.C. 251, 254, 387 S.E.2d 265, 267–68 (1990). The grant or denial of new trial motions rests within the discretion of the trial judge and will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or the conclusions reached are controlled by an error of law. *Vinson v. Hartley*, 324 S.C. 389, 403, 477 S.E.2d 715, 722 (Ct.App.1996). As previously noted, we find evidence in the record to support the jury's verdict and further find no reversible error in the manner in which the interrogatories were worded. Accordingly, the trial court did not abuse its discretion in denying Ligon's motion for new trial absolute.

## ENTRY OF JUDGMENT FOR DEFENDANTS

Ligon finally argues the trial court erred in granting the defendants' motion for entry of judgment in conformance with the special interrogatories. We agree.

When considering a motion for entry of judgment notwithstanding the verdict, the trial judge cannot disturb the factual findings of a jury unless the record discloses no evidence supporting those findings. *Force v. Richland Mem'l Hosp.*, 322 S.C. 283, 284, 471 S.E.2d 714, 715 (Ct.App.1996). If more than one reasonable inference exists, the jury verdict must stand. *Id.*

The trial court found the answers to the special interrogatories were consistent with each other but inconsistent with the general verdict, finding no competent evidence of damages other than the stipulated value of one percent of the company at the time of the initial public offering. However, we conclude competent evidence existed to support the jury's verdict. We therefore find no inconsistency in the jury's response to the special interrogatories and the general verdict.

Because the trial court charged the jury the general law regarding contract damages, Affinity argued without objection

regarding alternate manners and times to calculate damages, and evidence of other methods to calculate damages was presented to the jury, including the prospectus and testimony, we find the jury's verdict, including its responses to the special interrogatories, to be consistent with each other and supported by the record. We therefore reverse the trial court's award of judgment to the defendants and reinstate the jury verdict.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Ligon's motions for jnov, additur, and new trial absolute. We reverse the trial court's grant of defendants' motion for judgment in conformance with the special interrogatories. Accordingly, the jury's verdict is reinstated.

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN, C.J., and HUFF, J., concur.