697 S.E.2d 644

**Louis MANIOS and Jimmy B. Rogers, Jr., as partners in M & R Investors, a South Carolina General Partnership, and M & R Investors, a South Carolina General Partnership, Appellants/Respondents,**

v.

**NELSON, MULLINS, RILEY & SCARBOROUGH, LLP, and David E. Hodge, Esquire, Respondents/Appellants.**

No. 4699.

Court of Appeals of South Carolina.

Heard April 13, 2010.

Decided June 15, 2010.

Rehearing Denied Sept. 2, 2010.

128

Desa Ballard & P. Christopher Smith, Jr. of West Columbia, for Appellants–Respondents.

R. Davis Howser & Andrew E. Haselden of Columbia, for Respondents–Appellants.

SHORT, J.

In this legal malpractice case, M & R Investors, LLC, and Louis Manios and Jimmy Rogers, Jr., as partners in M & R Investors (collectively, M & R), argue the trial court erred in: (1) denying M & R's motion for new trial *nisi additur*; (2) striking M & R's claim for damages for lost profits; (3) denying M & R's motion for directed verdict or judgment notwithstanding the verdict on the issue of legal malpractice; and (4) denying M & R's motion for a new trial absolute on the issue of damages. In its cross-appeal, Nelson Mullins Riley & Scarborough, LLP, and David Hodge (collectively, Nelson Mullins), argue the trial court erred in denying Nelson Mullins' motions: (1) for summary judgment; (2) to strike with respect to M & R's alleged damages; (3) for a directed verdict; and (4) for judgment notwithstanding the verdict. We affirm.

## FACTS

M & R is a limited liability company dealing in real estate transactions. In January 2000, William J. Burk, individually and on behalf of Landex, Inc. and Concord Development Group, LLC (collectively, Borrowers) agreed to borrow $1.1 million from M & R, including a $100,000 fee to make the loan. The loan was to be secured by a 55–acre tract of land in Mecklenburg and Cabarrus counties, North Carolina.

M & R retained David Hodge of Nelson Mullins to handle the transaction including securing M & R's status as the first priority lienholder. M & R had retained Hodge for six or seven real estate transactions prior to the transactions in this case. Tim Gilbert, of Nexsen Pruet Law Firm's Charlotte office, represented Borrowers and was to perform the title work and obtain a title policy.

Unbeknownst to M & R, the property was encumbered by a 1999 deed of trust [1] to Michael J. Gallis, which was recorded against the property. The deed of trust arose from a 1998 agreement between Borrowers and Gallis.[2] In return for Gallis' "past and present efforts" regarding development and zoning on Borrowers' behalf, Gallis was to receive a $300,000 fee and a $200,000 bonus payment if re-zoning efforts on the secured property were successful. The 1998 agreement states: "This Agreement will be secured by a deed of trust described below." The agreement later states: "While this Agreement is fully binding in all respects, we would like to prepare a more detailed agreement.... Upon receiving the information related to the Property, we will prepare the deed of trust which will provide for payment to Michael Gallis as provided herein." The deed of trust was for $300,000.

Borrowers and Gallis entered into a subordination agreement on May 9, 2000. The subordination agreement provided Gallis would subordinate his deed of trust to M & R's $1.1 million loan to Borrowers. The agreement provided for penalty interest at 5 percent per month, compounded monthly, if payment to Gallis for his fee and bonus was not made within one business day after a "triggering event" such as a sale, or by July 17, 2000.

Borrowers and their counsel coordinated with Nelson Mullins to prepare the subordination agreement. According to a facsimile cover page from Hodge, "[t]he idea ... [was] to make it clear that ... [M & R's] security interest is, and will continue to be, first to the extent of the indebtedness."

The subordination agreement states in part:

This Agreement only subordinates the Michael J. Gallis Deed of Trust to the Lender's [M & R's] Deed of Trust to the extent of the original amount of $1,100,000.00 and any amounts advanced pursuant to the provisions of the Lender's Deed of Trust for payment of insurance premiums,

---

1. A deed of trust is a security interest in property, similar to a mortgage. *See Black's Law Dictionary* 414 (6th 1990) (defining a deed of trust).

2. This and other agreements at issue here are between Gallis and two companies including one of Borrowers', Concord Development Group, LLC.

taxes, costs of collection, or protection of the value of the Lender Property or Lender's rights in the Lender Property. *This Agreement is not a subordination of the lien of the Michael J. Gallis Deed of Trust to any renewals, future advances, modifications, or rearrangements of the Lender's Note and Deed of Trust to the extent any such modification increases the amount secured by the Lender's Deed of Trust.*

(Emphasis added.) The subordination agreement was recorded in both counties. M & R likewise recorded a deed of trust in each county.

In December 2000, M & R agreed to lend Borrowers an additional $1.6 million to be secured by the subject property.[3] M & R again retained Nelson Mullins to represent its interests in the transaction. Hodge testified he was "heavily involved in the drafting and negotiation" of the note on the second loan. The note provides the loan is secured by a deed of trust that "shall be in second position behind the Existing Deed of Trust." The deeds of trust likewise indicate the $1.6 million loan is second in priority.

Gilbert handled the title work and secured the title insurance policy. The title commitment indicates the subordination agreement as an exception, but not the Gallis deed of trust. The commitment was faxed to Susan Hughes, a licensed title insurance agent and paralegal at Nelson Mullins. Hodge did not recall reviewing it but conceded "[t]here's an excellent chance that I did." There was no billing record for anyone at Nelson Mullins reviewing the title commitment. In preparing the second loan, however, Hughes billed for reviewing the prior loan documents.

The title insurance policy also listed the subordination agreement as an exception, but not Gallis' deed of trust. Hodge testified he did not realize there was an intervening lien between the M & R deeds of trust until a "year or so after these transactions occurred." Hodge testified none of the documents put him on notice that the second loan would not have second priority.

---

3. There were two loans, one for $400,000 and one for $1.2 million, consolidated into one loan.

Borrowers defaulted on the loans and M & R hired Ashley Hogewood of Parker Poe Adams & Bernstein, LLP to handle a foreclosure action. At the time, M & R believed they had first and second priority. During the course of preparing the foreclosure action, Hogewood found Gallis' recorded subordination agreement and deed of trust. Hogewood notified M & R. According to Louis Manios of M & R, Hodge had never informed him of the subordination agreement. Manios testified he told Hogewood: "There's no way.... We have got a first and a second. David Hodge was told from day one we had to be in the first and second position." Manios testified that he, Rogers, Hodge, and Hogewood met, and Hodge claimed to know nothing about a subordination agreement. Although M & R had used Hodge in the past, this was the first time it hired Hodge to represent it as a lender. Manios testified he dealt only with Nelson Mullins and was not aware Nexsen Pruet was involved.

Robert McNeill, an attorney hired by the title insurance company, testified the priority of liens in North Carolina is not determined in a foreclosure action but in a separate proceeding in Superior Court. In this case, the foreclosure sale was held in December 2001. M & R bid $1,418,500 for the property. The bidding in North Carolina is held open for ten days and a subsequent bid must exceed the latest bid by five percent. Gallis bid $1,495,000. The Speedway, who owned property adjacent to the subject property, entered the next bid of $1,569,750. The required amount for a subsequent bid was $1,648,237. M & R entered a bid of $3,328,000. This was the final bid and the property was deeded to M & R. The Final Report and Account of Foreclosure Sale reports M & R was paid $1,390,304.79 but that "Adverse claims are asserted and the Trustee is in doubt as to who is entitled to surplus" funds of $1,923,137.

In March 2002, Gallis filed a petition to determine the ownership of the surplus funds. Gallis claimed entitlement to the second lien priority and $795,989.28, including compound interest. The title insurance company hired Robert McNeill to represent M & R in Gallis' action. The trial court granted summary judgment to Gallis and ordered that $300,000 of the surplus proceeds be distributed to Gallis. M & R appealed. The North Carolina Court of Appeals reversed the trial court

and remanded the matter for trial. M & R settled with Gallis for $300,000. M & R filed this action alleging legal malpractice, breach of fiduciary duty, and breach of contract.

At trial, Manios testified M & R borrowed $1 million from NBSC to lend to Borrowers on the first note. Hodge was aware M & R borrowed funds to make this loan. Manios explained the bank required additional collateral for the $1.6 million loan, so he and his partner, Jimmy Rogers, pledged other real property and personally-owned stock to borrow the loan amount to lend to Borrowers. Hodge knew M & R had to borrow money to fund both loans, and the partners had to pledge personal assets to fund the $1.6 million loan.

M & R also borrowed $3.2 million to purchase the property at the foreclosure sale. M & R paid interest on the $1.1 million loan until it was paid as the first lienholder from the proceeds of the foreclosure sale; paid $316,225 in interest on the $1.6 million loan during the note period and the three years of litigation; and paid interest on the $3.2 million loan.

The parties introduced expert testimony at trial. Warren Herndon, Jr., a real estate lawyer practicing in South Carolina, was qualified as an expert as to the standard of care owed by a South Carolina attorney with reference to a commercial real estate transaction. Herndon testified Hodge had a "duty to fully find out what was represented by the subordination agreement, and ... to find out" the effect on the new loan. Herndon opined Hodge and Nelson Mullins failed to meet their obligations to M & R in connection with the $1.6 million loan, and the deviation from the standard of care was the proximate cause of damages to M & R. Herndon testified obtaining the title policy did not automatically discharge the attorney's obligation to the client. During cross-examination, Herndon admitted Gilbert should have notified Borrowers, the title company, and Hodge about the Gallis lien when doing the title work for the closing on the $1.6 million loan. Herndon testified Hodge should have reviewed the subordination agreement at the time of the $1.6 million loan as it "was such an important part of making sure the lien position was correctly handled in the first lien."

H. Dave Whitener, Jr. was qualified as an expert in real estate law. Whitener opined Hodge did not deviate from the

standard of care by relying on the title insurance policy and failing to conduct an independent title search for either loan. Whitener testified the Gallis deed of trust should have been reflected in the warranty sections of M & R's deeds of trust for the $1.6 million loan. Whitener stated the title commitment and policy should also have mentioned the Gallis lien. Due to the failure of these documents to mention the Gallis lien, according to Whitener, Hodge could logically conclude the Gallis lien had been satisfied or was no longer a lien against the property as it related to the $1.6 million loan. Finally, Whitener concluded Hodge met the standard of care in handling a real estate transaction by relying on the documents, which placed the two M & R loans in first and second priority. Whitener conceded he would have determined the $1.6 million loan was not in second position.

At the close of M & R's case, the trial court granted Nelson Mullins' motions for directed verdicts as to: (1) breach of fiduciary duty; (2) punitive damages on the breach of contract action; and (3) punitive damages on the malpractice claim, finding insufficient evidence to support punitive damages. The trial court also granted Nelson Mullins' motion to strike M & R's claim of damages for lost profits. The court gave a curative instruction to the jury to disregard the evidence of lost profits. The trial court, *inter alia*, denied Nelson Mullins' motions for directed verdicts as to: (1) the statute of limitations; (2) breach of contract; (3) a bar of the malpractice claim by comparative negligence; and (4) a bar of the malpractice claim by intervening negligence. The trial court also denied Nelson Mullins' motion to strike the claim for interest damages. At the close of the evidence, the trial court denied both parties' motions for directed verdicts.

The jury found for Nelson Mullins on the malpractice claim and for M & R on the breach of contract claim, awarding $53,088 in damages. The trial court denied the parties' post-trial motions. All parties appealed.

## STANDARD OF REVIEW

In an action at law on appeal of a case tried by a jury, this court's review is restricted to corrections of errors of law. Factual findings of the jury will not be disturbed unless there

is no evidence reasonably supporting the findings. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. M & R's Appeal

#### A. *Nisi Additur*

█ M & R argues the trial court erred in denying its motion for new trial *nisi additur.* We disagree.

█ The determination of damages by a jury is entitled to substantial deference. *Stevens v. Allen,* 336 S.C. 439, 446–47, 520 S.E.2d 625, 629 (Ct.App.1999). "The trial court has the power to grant a new trial *nisi additur* when it finds the amount of the verdict to be merely inadequate." *Ligon v. Norris,* 371 S.C. 625, 635, 640 S.E.2d 467, 472 (Ct.App.2006). The denial of a motion for *additur* is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Id.* "The consideration of a motion for a new trial *nisi additur* requires the court to consider the adequacy of the verdict in light of the evidence presented." *Id.* There is no abuse of discretion in the trial court's denial of a motion for new trial nisi where there is evidence to support the verdict. *Id.* at 635, 640 S.E.2d at 473. "When considering a motion for a new trial based on the inadequacy or excessiveness of the jury's verdict, the trial court must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 27, 602 S.E.2d 772, 781 (2004).

In *Todd v. Joyner,* 385 S.C. 509, 512, 685 S.E.2d 613, 615 (Ct.App.2008), *aff'd,* 385 S.C. 421, 685 S.E.2d 595 (2009), this court affirmed the trial court's denial of Todd's motion for new trial *nisi additur* where Joyner stipulated to her negligence and the jury awarded only the amount of Todd's medical expenses. We found evidence in the record supporting Joyner's argument at trial that not all of the damages claimed were proximately caused by Joyner. *Id.* at 517, 685 S.E.2d at 618.

In *Ligon,* 371 S.C. at 635, 640 S.E.2d at 472–73, this court likewise affirmed the trial court's denial of plaintiff's motion for new trial *nisi additur.* In *Ligon,* plaintiff claimed a one percent interest in a corporation, alleging damages of $5,468,881, the value of the one percent at the time of the initial public stock offering. *Id.* at 631–32, 640 S.E.2d at 470. This court found evidence in the record that the jury could have relied on to value the corporation at a time other than the initial stock offering in reaching its verdict of $382,148. *Id.* at 632–33, 640 S.E.2d at 471.

M & R claimed damages of $316,225, which was the interest paid on the funds it borrowed to make the $1.6 million loan. M & R claimed entitlement to this interest based on the three years the surplus funds were held by the court pending resolution of the Gallis claim. Although it is unclear from the record exactly how the jury arrived at its verdict of $53,088, there is evidence to support an award of less than $316,225. As in *Todd,* the jury could have determined that not all of the interest claimed was proximately caused by the breach of contract. For instance, at the time M & R bid $3.328 million for the property during the foreclosure bidding, the bid was at $1,569,750 and M & R could have bid five percent above that bid rather than $3.328 million.[4]

As in *Ligon,* the jury in this case could have determined M & R was entitled to interest for a period less than three years. For instance, the trial court awarded Gallis $300,000 in September 2003. The North Carolina Court of Appeals' judgment was entered in December 2004. M & R and Gallis settled for $300,000 after that time. We find no error by the trial court in denying M & R's motion for new trial *nisi additur.*

### B. Lost Profits

■ M & R argues the trial court erred in striking its claim of damages for lost profits. We disagree.

M & R claimed it had to forego other investment opportunities during the period of the North Carolina litigation and this

---

4. The trial court denied Nelson Mullins' motion for a directed verdict based on comparative and/or intervening negligence. The trial court permitted Nelson Mullins to argue M & R's bid of $3.328 million was not foreseeable.

was foreseeable to Nelson Mullins. Manios testified M & R lost $120,000 due to a loan they could not make in October 2002 to developer Arthur Cleveland, and $96,000 in December 2003 on another loan to Cleveland. Manios testified he and Rogers lost profits of $655,600 on Pinckney Retreat, a development in Beaufort, because their assets were tied up and M & R had to bring in outside investors. M & R also claimed to have lost the benefit of a tax deduction worth $228,000 from the donation of a conservation easement to the Beaufort Historical Society. The trial court struck the claim for lost profits, finding them not foreseeable. The court stated:

[C]ertainly it was well within the contemplation that [Hodge] was aware that personal assets had been pledged ... and I think it is foreseeable that if there was a problem ... that those assets could be tied up[;] I do not find that it is foreseeable that ... he would understand that by tying up those personal assets in this particular transaction that [M & R] would then be prohibited from using those personal assets in ... other individual projects down the road.

■ Lost profits may be recovered in a breach of contract action under a three-prong test:

First, profits must have been prevented or lost as a natural consequence of the breach of contract. The second requirement is foreseeability; a breaching party is liable for those damages, including lost profits, which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of the breach of it. The crucial requirement in lost profits determinations is that they be established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative.

*Drews Co. v. Ledwith–Wolfe Assocs.*, 296 S.C. 207, 213, 371 S.E.2d 532, 535–36 (1988) (internal citations omitted). Damages must either flow as a natural consequence of the breach or have been reasonably within the parties' contemplation at the time of the contract. *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 595, 493 S.E.2d 875, 880 (Ct.App.1997); *see S.C. Fin. Corp. of Anderson v. West Side Fin. Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 335–36 (1960) (stating "profits that have been prevented or lost as the natural consequence of a breach

of contract are recoverable as an item of damages in an action for such breach").

In *Sterling Development Co. v. Collins*, the South Carolina Supreme Court stated:

> In claiming lost profits, the degree of proof required is that of reasonable certainty. The proof must pass the realm of conjecture, speculation or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.

309 S.C. 237, 242, 421 S.E.2d 402, 405 (1992) (internal citation omitted).

We find the trial court did not err in finding lost profits in this case were not in the contemplation of the parties. Although Hodge knew Manios and Rogers were pledging personal assets to fund the $1.6 million loan, this was the first time M & R had used Hodge in a transaction in which M & R was lending money to a third party. Furthermore, the Pinckney Retreat project was approximately three years after the $1.6 million loan was made. We conclude it was not foreseeable that Hodge would understand that by pledging personal assets on the $1.6 million loan, M & R would potentially lose future business opportunities.

## C. Denial of Directed Verdict on Legal Malpractice Claim

M & R argues the trial court erred in denying its motion for directed verdict or judgment notwithstanding the verdict on the issue of legal malpractice. We disagree.

When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, the appellate court applies the same standard as the trial court. *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). The court must view the evidence and inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). The appellate court will only reverse the trial court's ruling when there is no evidence to support the ruling or when the ruling is controlled by an error

of law. *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

In an action for legal malpractice, the claimant must prove four elements: (1) the existence of an attorney-client relationship; (2) breach of a duty by the attorney; (3) damage to the client; and (4) proximate causation of the client's damages by the breach. *Smith v. Haynsworth, Marion, McKay & Geurard,* 322 S.C. 433, 435 n. 2, 472 S.E.2d 612, 613 n. 2 (1996).

During the trial, each side presented expert testimony. Herndon testified Nelson Mullins did not meet its obligations to M & R in connection with the $1.6 million loan because it did not fully explore the effect of the subordination agreement although it was listed in the title insurance commitment. Herndon opined this deviation from the standard of care caused damages to M & R. Contrarily, Whitener testified Nelson Mullins did not deviate from the standard of care by relying on the loan documents that placed the two M & R loans in first and second priority. Viewed in the light most favorable to Nelson Mullins, the trial court did not err in denying M & R's motion for directed verdict on the legal malpractice claim.

### D. Denial of Motion for New Trial Absolute on Damages Based on Jury Instructions Regarding Intervening Acts

▇▇▇ M & R argues the trial court erred in denying its motion for a new trial absolute on the issue of damages based on erroneously charging the jury on intervening acts in the jury instructions on proximate cause. We disagree.[5]

▇▇▇ The grant or denial of new trial motions rests within the discretion of the trial court and its decision will not be disturbed on appeal unless the findings are wholly unsupport-

---

5. Nelson Mullins argues this issue is not preserved because the trial court did not rule on its motion for directed verdict based on intervening acts, made at the close of all evidence. Nelson Mullins made the motion in conjunction with several other motions. The trial court stated: "I think those are all jury issues, and so I'm going to deny them on that basis." To preserve an issue for appellate review, the issue must be raised to and ruled upon by the trial court. *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). We find the issue is preserved and address it on the merits.

ed by the evidence or the conclusions reached are controlled by error of law. *Vinson v. Hartley,* 324 S.C. 389, 403, 477 S.E.2d 715, 722 (Ct.App.1996). An appellate court will not reverse a trial court's ruling regarding jury instructions unless the trial court abused its discretion. *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). "When instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues." *Id.* at 390, 529 S.E.2d at 539.

"Evidence of an independent negligent act of a third party is directed to the question of proximate cause." *Matthews v. Porter,* 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962). "The intervening negligence of a third person will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 89, 502 S.E.2d 78, 83 (1998). Ordinarily, proximate cause is a question for the jury. *McKnight v. S.C. Dep't of Corr.,* 385 S.C. 380, 387, 684 S.E.2d 566, 569 (Ct.App.2009).

During the trial, evidence of intervening acts of others was presented including Whitener's testimony that the title insurance policy on the first loan contained an error by omitting mention of the Gallis deed of trust. This error, according to Whitener, "end[ed] up perpetuating itself through the title insurance commitment for the [$]1.6 [million loan] and later the title insurance policy...." Whitener testified the second title insurance policy was probably based on an "update of the title[,]" leading "to the problem that later presented itself with the issue as to what happened to the Gallis lien." We find no error by the trial court in denying M & R's motion for new trial absolute based on jury instructions regarding intervening acts of negligence.

## II. Nelson Mullins' Appeal

### A. Denial of Motion for Summary Judgment

Nelson Mullins argues the trial court erred in denying its motion for summary judgment. Prior to trial, Nelson Mullins moved for summary judgment and the trial court denied the

motion. "[T]he denial of a motion for summary judgment before trial is not reviewable after a trial of a case on its merits." *Holloman v. McAllister*, 289 S.C. 183, 186, 345 S.E.2d 728, 729 (1986). Accordingly, we decline to address this issue.

## B. Motion to Strike Evidence of Damages

Nelson Mullins argues the trial court erred in denying its motion to strike evidence of damages including interest paid on the $1.6 million loan and lost profits. We disagree.

### 1. Interest

The admission of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Pike v. S.C. Dep't of Transp.*, 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000). A motion to strike is likewise within the trial court's discretion and will not be reversed absent an abuse of discretion. *Mayes v. Paxton*, 313 S.C. 109, 115, 437 S.E.2d 66, 70 (1993). The trial court found the interest paid was a foreseeable consequence of pledging assets and denied the motion to strike evidence of interest. We find no abuse of discretion in the trial court's denial of Nelson Mullins' motion to strike evidence of interest paid on the $1.6 million loan.

### 2. Lost Profits

At the close of M & R's case, the trial court granted Nelson Mullins' motion to strike M & R's claim of damages for lost profits. The court gave a curative instruction to the jury to disregard the evidence of lost profits. The trial court stated:

[A]ny damages that ... have been claimed relating to the Pinckney Landing, the Beaufort County transaction, are not allowed; as well as any damages that are claimed from the inability to make certain loans to Mr. Cleveland ... those also are not allowed. Therefore, ladies and gentlemen, you are to treat that evidence as if it had not been presented to you. You must not consider it in any way in your deliberations when we get to that particular point. It is no longer an issue for you all to consider.

■■ A curative instruction is generally deemed to have cured any alleged error. *State v. White*, 371 S.C. 439, 445, 639 S.E.2d 160, 163 (Ct.App.2006). We find the trial court's curative instruction was sufficient to cure any alleged error arising from the evidence of lost profits.

## C. Denial of Motion for Directed Verdict

Nelson Mullins argues the trial court erred in denying its motions for directed verdict on the issues of: (1) the statute of limitations; (2) the measure of damages; (3) breach of contract; and (4) legal malpractice. We disagree.

"In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence." *Sims v. Giles*, 343 S.C. 708, 714, 541 S.E.2d 857, 861 (Ct.App.2001). The trial court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 714, 541 S.E.2d at 860. If the evidence as a whole is susceptible of more than one reasonable inference, the case should be submitted to the jury. *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 15, 567 S.E.2d 881, 888 (Ct.App.2002). "In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the corrections of errors of law." *Pinckney v. Winn–Dixie Stores, Inc.*, 311 S.C. 1, 3, 426 S.E.2d 327, 328 (Ct.App.1992).

## 1. Statute of Limitations

■■■ Nelson Mullins argues the trial court erred in denying its motion for directed verdict based on the statute of limitations. This action is governed by a three-year statute of limitations period. S.C.Code Ann. §§ 15–3–530(1) & (5)(2005). *See RWE NUKEM v. ENSR Corp.*, 373 S.C. 190, 196, 644 S.E.2d 730, 733 (2007) (applying three year statute of limitations in breach of contract action); *Berry v. McLeod*, 328 S.C. 435, 444–45, 492 S.E.2d 794, 799 (Ct.App.1997) (finding three year statute of limitations applies to legal malpractice actions). The discovery rule applies in this action. *See Kelly v. Logan, Jolley, & Smith, LLP*, 383 S.C. 626, 632–33, 682 S.E.2d 1, 4 (Ct.App.2009) (applying discovery rule in legal malpractice action); *Maher v. Tietex Corp.*, 331 S.C. 371, 376–77, 500 S.E.2d 204, 207 (Ct.App.1998) (applying discovery rule in breach of contract action). According to the discovery rule,

the statute of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence that a cause of action might exist. *Abba Equip., Inc. v. Thomason*, 335 S.C. 477, 485, 517 S.E.2d 235, 239 (Ct.App. 1999). If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 338–39, 534 S.E.2d 672, 681–82 (2000).

When Borrowers defaulted on the loans, M & R hired Hogewood to handle the foreclosure action. Manios testified in his deposition that he contacted Hogewood in May 2001. According to Manios, Hogewood informed him about a month later of the Gallis deed of trust. Hogewood testified he became aware of the problem when preparing to file the foreclosure action, about "Octoberish." He further testified he did not determine the Gallis deed of trust would interfere with the foreclosure sale proceeds until receiving the order to foreclose and the foreclosure sale was held. The foreclosure sale was held in December 2001. The Final Report and Account of Foreclosure Sale, indicating adverse claims were asserted, was issued on February 28, 2002. Gallis filed his petition to determine the ownership of surplus funds in March 2002. This action was filed in November 2004.

We find the date the statutes of limitations began to run involves questions for the jury and find there was no error by the trial court in denying the motion for directed verdict on the issue of statutes of limitations.

## 2. Measure of Damages

Nelson Mullins argues the trial court erred in denying its motion for directed verdict, which was based on the measure of damages, and alleges the proper amount of damages for a missed lien is the amount it takes to remove that lien from the property. Nelson Mullins argues because the title insurance company paid the settlement amount to Gallis, M & R suffered no damages to remove the lien and was not entitled to interest paid on the $1.6 million loan during the pendency of the litigation. We find no error.

▇ In a breach of contract action, a party may recover for those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. *Benford v. Berkeley Heating Co.*, 258 S.C. 357, 362–63, 188 S.E.2d 841, 842–43 (1972). The proper measure of damages for breach of contract is the loss that was actually suffered as the result of the breach. *S.C. Fin. Corp. of Anderson v. West Side Fin. Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 335 (1960). In this case, although the title insurance company paid the Gallis settlement funds, M & R alleged damages including interest paid on the funds it borrowed to make the $1.6 million loan to Borrowers.

### 3. Denial of Directed Verdict on Breach of Contract Claim

▇ Nelson Mullins argues the trial court erred in denying its motion for a directed verdict on the breach of contract cause of action. We disagree.

In deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 538, 466 S.E.2d 368, 370 (Ct.App.1996). If more than one inference can be drawn from the evidence, the case must be submitted to the jury. *Id.* The necessary elements of a contract are offer, acceptance, and valuable consideration. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003). To recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach. *Fuller v. Eastern Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).

Viewed in the light most favorable to M & R, there is evidence in the record that M & R contracted with Nelson Mullins to provide legal services to protect its status as a first-priority lienholder for both loans. Manios testified Hodge knew M & R wanted to remain first in priority. M & R also presented evidence of a breach of the agreement through expert testimony that Nelson Mullins failed to protect this priority status. Finally, M & R presented evidence of damages proximately resulting from the breach in the form of interest. Therefore, we find the trial court properly submitted this issue to the jury.

## 4. Denial of Directed Verdict on Malpractice Claim

Nelson Mullins next argues the trial court erred in denying its motion for a directed verdict on the legal malpractice cause of action. We disagree.

The jury returned a verdict for Nelson Mullins on the legal malpractice claim so Nelson Mullins is able to show no prejudice resulting from the trial court's failure to direct a verdict in its favor on legal malpractice. *See Am. Fed. Bank v. Number One Main Joint Venture*, 321 S.C. 169, 174–75, 467 S.E.2d 439, 442 (1996) (stating the conduct of a trial is within the trial judge's sound discretion and will not be disturbed on appeal without a showing of abuse of discretion, error of law, and resulting prejudice).

## D. Denial of Motion for Judgment Notwithstanding the Verdict

Nelson Mullins argues the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV). We disagree.

In ruling on a motion for JNOV, the trial judge must view the evidence in the light most favorable to the nonmoving party. *Rogers v. Norfolk S. Corp.*, 356 S.C. 85, 92 n. 4, 588 S.E.2d 87, 90 n. 4 (2003). The court should not grant JNOV where the evidence yields more than one inference. *Id.* An appellate court may not overturn the decision of the trial court if there is any evidence to support the trial court's ruling. *Id.* This is the same standard applied to a motion for directed verdict. *Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 29, 491 S.E.2d 571, 573 (1997). For the reasons discussed in reviewing Nelson Mullins' motions for directed verdicts, we find no error by the trial court in denying its motion for JNOV.

## CONCLUSION

For the foregoing reasons, the jury verdict and orders on appeal are

**AFFIRMED.**

LOCKEMY, J., and CURETON, A.J., concur.