**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jonathan Paul Monte, Sr., and Susan Jennings Monte,
Respondents,

v.

Rodney Allyn Dunn, Shanna Dunn, Michael C. Miller
and Christopher R. Schmidt, Defendants,

Of whom Rodney Allyn Dunn and Shanna Dunn are the
Appellants.

In the interest of minors under the age of eighteen.

Appellate Case No. 2019-000663

_____

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge
W. Marsh Robertson, Family Court Judge

_____

Unpublished Opinion No. 2020-UP-265
Submitted August 28, 2020 – Filed September 4, 2020

_____

**AFFIRMED**

_____

Ronald S. Clement, of Greenville; and Amy Kristan
Raffaldt, of The Law Offices of Amy K. Raffaldt, of
Myrtle Beach, both for Appellants.

Andrew Richard Havran, of Greer, for Respondents.

Cassandra Parks Gorton, of Greenville, as Guardian ad Litem.

───────────

**PER CURIAM:**  Rodney Allyn Dunn and Shanna Dunn (collectively, Grandparents) appeal the family court's order awarding adoption and custody of Child 1 and Child 2 to Johnathan P. Monte, Sr., and Susan Monte (Susan; collectively, the Montes).  On appeal, Grandparents argue the South Carolina family court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA).[1]  Grandparents also contend the family court erred in (1) failing to exclude temporary guardianship authorization documents and awarding custody to the Montes based on its reliance on the documents; (2) finding the Montes had standing to seek custody as the children's psychological parents and *de facto* custodians; (3) granting adoption of the children to the Montes; (4) failing to grant them custody of the children; and (5) failing to award them a greater amount of visitation with the children.  Finally, Grandparents argue the guardian ad litem (the GAL) failed to abide by her statutory obligations. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

In 2013, the Montes met Christine Dunn (Mother) and Child 1 when Mother started dating the Montes' eldest son.  After Mother and the son ended their relationship, the Montes continued to have a relationship with Child 1 and provided for him financially and emotionally.  Child 1 even lived with the Montes from February 2014 until December 2015.  Mother and Child 1 moved to Tennessee in December 2015.  Even after Child 1 moved to Tennessee, the Montes maintained contact with him and would bring him back to South Carolina almost every month for a weeklong visit.  When Child 2 was born in 2016, he accompanied Child 1 on the visits to South Carolina with the Montes.  In March

───────────

[1] S.C. Code Ann. § 63-15-300 to -394 (2010).

2017, Mother asked the Montes if they would care for the children for a while, and they agreed.  The children were residing with the Montes in South Carolina when Mother passed away in May 2017 in Tennessee.  The children have resided with the Montes continuously since March 3, 2017.

On May 24, 2017, shortly after Mother's death, the Montes filed a petition in South Carolina for termination of parental rights (TPR) and adoption.[2]  Alternatively, the Montes requested custody.  The following day, Grandparents filed a petition in South Carolina requesting custody of the children.

On May 26, 2017, the family court held a temporary hearing and consolidated the Montes' and Grandparents' actions, granted the Montes temporary custody, and appointed the GAL.  On June 20, 2017, another temporary hearing was conducted, and both parties acknowledged Mother executed guardianship documents prior to her death, giving Susan guardianship over the children while they were in her care.[3]  Based on the documents, the family court took judicial notice of Mother's desire to give the Montes guardianship of the children and granted the Montes temporary custody of the children.  The family court also took into consideration Facebook messages from Mother that indicated she wanted to make the guardianship with the Montes a more permanent arrangement.[4]  Grandparents did not object to the guardianship documents or the Facebook messages.

Subsequently, on October 30, 2017, Grandparents filed a petition in Tennessee for custody of the children, TPR, and adoption.  Grandparents alleged the children were residents of Tennessee, and Tennessee had jurisdiction over the action pursuant to the UCCJEA.[5]  The following day, Grandparents filed a motion to dismiss the Montes' adoption action with the South Carolina family court, asserting South Carolina lacked subject matter jurisdiction to hear the action because it was not the children's home state.

---

[2] The Montes sought TPR as to the biological fathers.  Neither father has appealed.
[3] The guardianship documents were not admitted into evidence during this hearing, but they were included in the pleadings.  The record does not contain any evidence showing Grandparents moved to strike the documents from the pleadings.
[4] Although the family court referred to a "text message," based on the exhibits admitted into evidence during the final hearing, it appears the family court was referring to Facebook messages between Mother and Susan from April 20, 2017.
[5] Child 2 was born in Tennessee, and the children resided with Mother in Tennessee from December 2015 to March 2017.

The South Carolina family court denied Grandparents' motion to dismiss and issued a temporary order finding South Carolina had temporary emergency jurisdiction pursuant to the UCCJEA.[6] The court ordered the children to remain in the custody of the Montes and granted Grandparents two hours of supervised visitation twice per month based on the GAL's recommendation.

On February 27, 2018, the Tennessee Chancery Court dismissed Grandparents' Tennessee petition. After consulting with the South Carolina family court, the Tennessee Chancery Court determined South Carolina was the children's home state, and Tennessee did not have jurisdiction when Grandparents filed the action in Tennessee.

On March 22, 2019, the South Carolina family court issued a final order in the Montes' adoption action. In its final order, the family court terminated the parental rights of the biological fathers, granted custody and adoption of the children to the Montes, and awarded Grandparents a minimum of forty-eight hours of visitation every three months. This appeal followed.

Initially, the South Carolina family court had jurisdiction to make an initial custody determination pursuant to section 63-15-330(A)(4) of the South Carolina Code (2010).[7] Although South Carolina was not the home state of the children when this action was filed on May 24, 2017, no other state had jurisdiction to issue an initial custody determination over the children at that time. *See* § 63-15-330(A)(4) (providing South Carolina has jurisdiction to issue an initial custody determination if "no court of any other state would have jurisdiction under the criteria specified in item (1), (2), or (3)"); § S.C. Code Ann. 63-15-302(7) (2010) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."); § 63-15-330(A)(1) (providing South Carolina has jurisdiction to make an initial custody determination if South Carolina was the home state within six months before the action was filed, and the child is absent

---

[6] Section 63-15-336(B) of the South Carolina Code (2010) provides South Carolina has temporary emergency jurisdiction over children located in this state in certain circumstances.

[7] Although the UCCJEA does not apply to adoption petitions, it applies here because the Montes also sought TPR. *See* S.C. Code Ann. § 63-15-304 (2010) (providing the UCCJEA does not apply to adoption); *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012) (holding the UCCJEA governs TPR proceedings that are filed as part of an adoption action).

from this state, but a parent continues to live in this state); Tenn. Code Ann. § 36-6-216(a)(1) (2010) (providing Tennessee has jurisdiction to make an initial custody determination if Tennessee was the home state within six months before the action was filed, and the child is absent from this state, but a parent continues to live in this state).[8]

Second, the issue of the admissibility of the guardianship documents is not properly before this court because it was not preserved for appellate review. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct. App. 2006) ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [family] court."). Grandparents objected to the guardianship documents for the first time at the final hearing, arguing only that the documents were fraudulent and not properly authenticated.[9] The court indicated it would take the issue of the admissibility of the documents under consideration and invited both parties to present briefs. Thereafter, Grandparents withdrew their objection, stating they were satisfied with the ruling as long as the family court exercised its discretion in determining what weight to give the documents. Thus, Grandparents did not preserve this issue for appeal. *See Ligon v. Norris*, 371 S.C. 625, 633, 640 S.E.2d 467, 472 (Ct. App. (2006) ("An objection withdrawn at trial constitutes an express waiver of the issue and does not preserve the issue for appellate review."). Although this court can overlook procedural rules when the rights of minors are involved, we decline to do so here because the consideration of the guardianship documents ultimately aided the court in determining the children's best interest. *See Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 654 (2006) (acknowledging appellate courts can overlook procedural rules when the rights of minors are involved but "declin[ing] to exercise [its] discretion to avoid application of the procedural bar").

---

[8] At the time this action was filed, neither of the children's fathers lived in Tennessee. Thus, Tennessee did not have initial custody determination pursuant to section 36-6-216(a)(1) of the Tennessee Code (2010). Even if Tennessee retained such jurisdiction, it declined jurisdiction when it dismissed Grandparents' action. *See* § 63-15-330(A)(3) (providing South Carolina has jurisdiction to issue an initial custody determination if "all courts, having jurisdiction under item (1) or (2), have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child").

[9] Although Grandparents now argue the documents constituted hearsay, they did not raise that argument to the family court.

Additionally, the family court did not abuse its discretion in finding the Facebook messages were admissible as a hearsay exception under Rule 803(3) of the South Carolina Rules of Evidence. *See Stoney v. Stoney*, 422 S.C. 593, 594, 813 S.E.2d 486, 486, n.2 (2018) (holding evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion); Rule 803(3), SCRE (setting forth as an exception to hearsay "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will"). The Facebook messages demonstrated Mother's intent and plan to provide the Montes with guardianship over the children in the event she could no longer provide for the children. The messages between Mother and Susan were indicative of the trust Mother placed in the Montes to care for her children. Thus, the family court did not abuse its discretion in admitting these messages under Rule 803(3).

Third, the Montes, as residents of South Carolina, had standing to file a petition to adopt the children, and the adoption was in the best interest of the children. *See* S.C. Code Ann. § 63-9-60(A)(1) (Supp. 2019) ("Any South Carolina resident may petition the court to adopt a child."); *S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 93, 814 S.E.2d 148, 165 (2018) ("In an adoption proceeding, the best interest of the child is the paramount consideration."). Here, the children lived a majority of their lives with the Montes, and the Montes cared for the children financially and emotionally. The evidence presented at trial showed the Montes prioritized the welfare of the children, had a parent-child relationship with them, and provided for all of their needs. Although Grandparents were biologically related to the children, that is but one factor for this court to consider. *See Smith*, 423 S.C. at 93, 814 S.E.2d at 165-66 ("We find the biological relationship between [the g]randmother and [the c]hild is relevant to this Court's consideration; however, this factor is not determinative."); *McCutcheon v. Charleston Cty. Dep't of Soc. Servs.*, 302 S.C. 338, 347, 396 S.E.2d 115, 120 (Ct. App. 1990) (finding the grandparents were "not entitled to any preferences" in an adoption proceeding and "[t]heir status, as blood relatives, [was] but one factor in determining the child's best interests"). Additionally, the children did not have a relationship with Grandparents prior to Mother's death in 2017. Because adoption by the Montes is in the best interest of the children, we need not address issues regarding custody, including whether the Montes qualified as psychological parents or *de facto* custodians of the children. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

Fourth, the visitation awarded to Grandparents—consecutive forty-eight hours every three months—is reasonable and appropriate, and we decline to increase that award of visitation.[10]  *See Bazen v. Bazen*, 428 S.C. 511, 530, 837 S.E.2d 23, 33 (2019) ("For grandparent visitation[,] . . . courts must give deference to the judgment of the parent."); *id.* ("Just as a court must defer to a parent's decision on the fact of grandparent visitation, a court must also defer to reasonable limitations or conditions a fit parent chooses to impose on grandparent visitation."); *id.* at 531, 837 S.E.2d at 34 ("When fashioning an appropriate schedule of grandparent visitation . . . , a court must attempt to accommodate a fit parent's reasonable concerns for the welfare of her children."); *id.* at 533, 837 S.E.2d at 34 (finding when "the grandparents never acted in a parental capacity, . . . there [was]no reason to believe they [were]needed now as a parent-like source of stability in the children's lives").

Finally, the GAL conducted a thorough, independent, balanced, and impartial investigation of Grandparents and the Montes.[11]  *See* S.C. Code Ann. § 63-3-830(A) (2010) (setting forth the responsibilities and duties of a GAL). Specifically, the GAL (1) obtained and reviewed relevant documents, (2) obtained financial records of both parties, (3) accessed the children's medical records, (4) visited the children when they interacted with both parties, (5) visited the home settings of both parties, (6) interviewed both parties and others with relevant knowledge of the case and the parties, (7) compiled two reports and took notes, and (8) investigated the criminal history of all parties.  Further, the GAL did not offer a recommendation to the family court.  *See id.* ("The final written report must not include a recommendation concerning which party should be awarded custody, nor may the [GAL] make a recommendation as to the issue of custody at the merits hearing unless requested by the court . . . .").  Thus, the GAL properly performed her duties in this case.

---

[10] The Montes do not oppose the visitation awarded by the family court; they simply ask for it not to be increased.

[11] Although Grandparents did not move to relieve the GAL or otherwise preserve any issues related to the GAL, we address the merits of this argument out of an abundance of caution.  *See Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) ("[P]rocedural rules are subservient to the court's duty to zealously guard the rights of minors.").

**AFFIRMED.**[12]

**THOMAS, HILL, and HEWITT, JJ., concur.**

---

[12] We decide this case without oral argument pursuant to Rule 215, SCACR.